RANDOLPH RODMAN, WHO SUES, &c., PLAINTIFF IN ERROR, v. SAMUEL WEINBERGER, DEFENDANT IN ERROR.

Submitted December 10, 1910—Decided March 6, 1911.

1. Where a principal is bound to indemnify an agent and the agent pays money to prevent loss, a request will be implied and an action may be maintained by the agent for money paid for the use of the principal.

2. A broker authorized to sell stock who makes the sale and is obliged subsequently to buy in the stock at an advanced price may maintain an action against his principal although his authority was not in writing.

3. The defendant employed brokers to sell stock; the order was either to "sell at 50⅜ or stop at 50," or to "sell at 50½ or ⅜ but not below 50, stop at 50." There was testimony on the part of the plaintiff that in the trade such an order as the former authorized a sale at a price below fifty. *Held*, that it was a jury question (1) what the actual contract was; (2) whether the words meant what the plaintiff claimed.

On error to the Supreme Court.

For the plaintiff in error, *Howe & Davis* (*John A. Bernhard*, on the brief).

For the defendant in error, *Samuel Kalisch.*

The opinion of the court was delivered by

SWAYZE, J. The defendant employed Sheldon & Company as brokers to sell stock which he owned. According to the testimony of the plaintiff the order was to sell "at 50⅜ or stop at 50." According to the defendant his order was to "sell at 50½ or ⅜, but not below 50, stop at 50." The plaintiff sold at forty-nine and three-quarters. There was testimony on the part of the plaintiff that in the trade such an order as the former authorized a sale at a price below fifty. The defendant was notified· of the sale and immediately ordered the brokers to cover that stock at once. The defendant testified: "That

means buy it back, so there would not be much loss on either side." He says the stock was then selling at forty-nine and seven-eighths or forty-nine and three-quarters, so that his order, according to his own testimony, authorized them to cover at as high a price as forty-nine and seven-eighths. The market, however, seems to have been a rising one, and the plaintiffs were obliged to buy in the stock at a higher price to protect themselves, and brought this action, declaring upon the common counts. The learned trial judge upon these facts directed a verdict for the defendant.

The defendant attempts now to sustain this verdict on several grounds, which we shall notice in order.

*First.* The contention that the verdict can be sustained because the plaintiff cannot recover upon the common counts in *assumpsit* is untenable. It is an attempt to justify a verdict for the defendant upon a mere failure of the plaintiff to plead correctly. Even if we were dealing only with a nonsuit, the objection to the declaration ought not to prevail. It contains a count for money paid. This count is proper where as in this case money has actually been paid, provided it has been paid at the defendant's request, express or implied. 1 *Chit. Pl.* 350. A request will be implied where a principal is bound to indemnify an agent and the agent pays the money to prevent loss. *Leake Cont.* (*3d ed.*) 38. · In reference to this very subject, the author says: "The employment of a broker to buy or sell stock or shares imports a request to make all payments required by the then existing rules of the stock exchange, or other market in which he is employed to act, so far as such rules are legal and reasonable." The cases he cites support his statement. The question has been dealt with in *Perin* v. *Parker,* 126 *Ill.* 201, which was a case of a sale of grain by a broker on the Chicago board of trade. Moreover, the testimony of the defendant himself that he authorized the plaintiff to cover the sale at a price as high as forty-nine and seven-eighths at least, so that there would not be much loss on either side, would justify an inference by the jury that the defendant recognized his liability and authorized the plaintiffs to expend their money for his use.

*Second.* The contention that there was no memorandum such as is required by the statute of frauds is without merit. As between the plaintiff and the defendant, the contract was not one of sale but of agency, and the authority was not required to be in writing. *O'Reilly* v. *Keim, 9 Dick. Ch. Rep.* 418. It cannot be said that there could be no obligation to indemnify because of the want of a memorandum as between Sheldon & Company and their vendee; for since Sheldon was authorized to sell for the plaintiff he was authorized to do what was necessary to complete the sale, and in substance it made no difference whether Sheldon's contract was executory and evidenced by a written memorandum, or executed either by an actual delivery of the stock or a settlement on account thereof with the vendees.

*Third.* There is sufficient evidence to warrant a finding that the account had been assigned to the plaintiff. The objection that he could not sue in his own name, if tenable at all, was cured by an amendment at the trial.

*Fourth.* The more important question is whether it was proper for the court to construe this contract in accordance with the defendant's view or whether the question what the actual contract was should have been submitted to the jury. Since the contract was an oral one, and the parties differed as to its exact terms. it was obviously necessary for a jury to settle which version was correct, under proper instructions as to the meaning of the words, if that meaning itself was so plain that it also did not involve a jury question. *Wigm. Ev.,* § 2556. The words used in this case were not plain. Unexplained, they mean nothing to me, and probably nothing to anyone not familiar with the language of the stock exchange. They required evidence to explain their meaning as much as if they were written in a foreign tongue or formed part of a cipher code. This whole subject is admirably discussed by Professor Wigmore. *Wigm. Ev.,* §§ 2461, 2467. It is needless, however, to go into the subject at length since it has already been dealt with in our own decisions, of which the more recent are *Halsey* v. *Adams,* 34 *Vroom* 330; *Smith & Wallace Co.* v. *Lunger,* 35 *Id.* 539; *Wallace* v. *Leber,* 36 *Id.*

195; *Calumet Construction Co.* v. *Hoboken,* 49 *Id.* 676. Where the evidence as to the trade meaning of a term is conflicting, a jury question as to which meaning is correct arises, even when the contract is in writing. *Smith & Wallace Co.* v. *Lunger,* 35 *Vroom* 539, 541. Much more must this be the case where the contract is an oral one and there is a conflict of evidence as to its terms.

There was error in directing a verdict for the defendant. It is urged that no assignment of error presents this question. The fourth assignment, however, is that the court directed a verdict in favor of the defendant, whereas the court should have directed a verdict in favor of the plaintiff. The words after "whereas" may be regarded as surplusage, and in that case the assignment presents the error squarely.

The judgment should be reversed to the end that a *venire de novo* may be awarded.

*For affirmance*—REED, MINTURN, BOGERT, VROOM, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, VOORHEES, VREDENBURGH, CONGDON, SULLIVAN, JJ. 11.