LEVI FOX, PROSECUTOR, v. TOWNSHIP OF PEMBERTON IN THE COUNTY OF BURLINGTON, AND EUGENE VERGA AND FRANK AVERY, PARTNERS TRADING AS VERGA & AVERY.

Argued June Term, 1911—Decided August 18, 1911.

1. Under section 31 of the Township act of 1899 (*Pamph. L., p.* 385), it must affirmatively appear, in order to put into operation this statute before the close of the fiscal year, that at the time of the proposed transfer, the moneys intended to be transferred are actually in the treasury, unexpended and unappropriated, and that a certain amount is actually charged up to and transferred from such moneys to the account for which they are proposed to be used.

2. To convert money in uncertain amount, from any balance, whenever it may exist, at any time, present or future, would tend to subvert the statutory policy of the state compelling municipal bodies to keep their expenditures within the limits of the appropriations.

On *certiorari.*

For the prosecutor, *James Mercer Davis.*

For the defendants, *V. Claude Palmer* and *Jonathan H. Kelsey.*

The opinion of the court was delivered by

VOORHEES, J. On the 22d day of June, 1911, the township committee of the township of Pemberton, in the county of Burlington, passed a resolution accepting the bids of Verga & Avery for the construction of an improved road from Brown's Mills to Lakehurst in said township. The amount of the bid for this road, and the amount of the contract entered into in pursuance of that resolution, was $21,044.80.

The road was to be constructed under section 17 of "An act to provide for the permanent improvement of public roads in this state" (*Pamph. L. 1905, p. 94*), and under which the state became obligated to pay one-third, making the obligation of the township under that contract $14,029.87.

The above resolution, as well as the contract entered into in pursuance of it, are sought to be set aside by the prosecutor, a taxpayer of the township.

A rule to show cause was granted why a writ of *certiorari* should not issue, and now, by agreement of the parties, this case is to be decided as if the writ had actually been issued, and the case had been duly brought on for hearing, before a single justice, who is to decide the whole controversy.

Two reasons have been urged why the resolution and contract should be annulled. The *first* is that the original resolution in which the appropriation was voted, and the resolution to construct the road in question, together with two other roads, was passed, limited the total cost to the amount of a certain bond issue; that the amount for which the township has been obligated is in excess of such limited amount, and not in hand to be applied, and *secondly,* that the amount agreed to be expended by the contract is in excess of any appropriation lawfully made for that purpose.

It will be necessary, in order to understand the situation, to recount the steps taken to procure this improvement.

In 1910, a petition was presented by more than one-half of the property holders and taxpayers, asking that the township issue bonds for $20,000 for the construction of three public roads in the township, of which the road under consideration was one.

Twelve thousand five hundred dollars of that issue was apportioned to the road in question, and in that resolution appears the following clause:

"Township bonds to be for $12,500 for the first-mentioned road and expenses thereof and incident thereto," and in pursuance of that petition, the following resolution was ordered adopted. It was resolved: "That bonds of the township be issued for the purpose of raising money with which to defray the cost and expenses of grading, macadamizing, telfording and graveling, and all expenses incident thereto, for the following public roads," &c.

Upon the adoption of this resolution, an election was held July 26th, 1910, under section 84 of the Township act of 1899, as amended 1902 (*Pamph. L., p.* 800), and resulted in an affirmative vote. Thereafter the bonds were authorized to be issued by the township committee.

The three roads mentioned were also authorized to be improved, and bids were invited for that purpose. They resulted in aggregate bids of $36,153.95. The state having accepted the roads to be improved, and having agreed to pay one-third, lessened the township's liability upon these three bids to $24,103.62. The bonds took care of $20,000; subscriptions from private individuals were received by the township committee to the amount of $3,150 (*Black* v. *Freeholders,* 52 *Vroom* 444), leaving to be raised in excess of the bond issue for the three roads $953.62.

Taking up the character of the resolution of the township committee, and that upon which the voters passed at the election, it is urged by the prosecutor that this was exclusive of the further expense to be incurred by the township, and limited the township to an expenditure of $20,000 only.

The Township act of 1899, section 83, subdivision 2, provides that township bonds may be issued for the following purposes:

"To raise money with which to pay the whole or a part of the cost of any of the following improvements, * * * the grading, macadamizing and telfordizing of roads."

It therefore appears that the township committee was at liberty to include the whole or a part of the cost in the issue of bonds. We are, therefore, driven to the wording of the resolution to see whether it prevented any further expenditure than the amount of the bond issue.

The exact words are: "That the bonds of the township be issued for the purpose of raising money with which to defray the cost and expenses of grading, macadamizing, telfording and graveling, and the expenses incident thereto, for the following public roads." Then follows a description of the roads, and further: "That said township bonds be issued in amounts of $12,500 for the first above-mentioned road, and expenses thereof and incident thereto."

I am inclined to think that the resolution, read in connection with the petition, which asks that the township be bonded for $20,000 for the construction of the road, does not display an intention that all the costs of the roads at that preliminary stage, before bids had been invited, were intended to be limited by the amount of the bond issue. Therefore, I conclude that the bonds were issued to defray the road expenses *pro tanto*.

The remaining question to be decided is whether the township committee had a right to use any unexpended balance in the treasury, to supplement the subscription and the bond issue.

The following resolution was adopted before the bids were accepted and the contracts authorized:

'"Whereas, the amount subscribed toward the overcharge in the bids over the money appropriated by bond issue amounts to some over $3,000 be accepted, and that the township committee do and the same is hereby authorized and ordained, viz., that enough money be converted from any unexpended balance in the treasury of the township and applied and set aside in a fund for the payment of the building of these roads, and expenses thereof and incident thereto."

By section 31 of the Township act of 1899 (*Pamph. L., p.* 385), it is provided that:

"Whenever any money comes into the hands of the township treasurer from license fees, arrears of taxes, or any source other than the assessment, levy and collection of taxes for the current year, not herein or otherwise applied to any object or purpose, it may, at any time, be applied by the township committee to any purpose for which township money may be lawfully expended."

Under this section the township claims to have acted, and while it has, in the resolution, used the term "unexpended balance in the treasury," this same section of the statute, in the second part thereof, uses this term, not only in regard to unexpended money raised by taxation, but also has applied it to license fees and other moneys mentioned in the earlier part of the section, and so it may be that the township committee may fairly be deemed to have referred to moneys which they had the power to appropriate before the close of the fiscal year.

But it will be noticed that the township committee has not ascertained or declared that there are any moneys in hand unappropriated, derived from the sources mentioned in the statute other than from taxes, and not otherwise applied, nor have they set aside any specific moneys.

To put into effect this statute before the close of the fiscal year, it must affirmatively appear that at the time of the proposed transfer such moneys intended to be transferred are actually in the treasury unexpended and unappropriated, and that a certain amount is actually charged up to and transferred from such moneys to the account for which they are proposed to be used.

To convert money in uncertain amount from any balance whenever it may exist, at any time, present or future, would tend to subvert the statutory policy of the state compelling municipal bodies to keep their expenditures within the limit of the appropriations, by laxity and uncertainty in applying the provisions of the thirty-first section. This section should be strictly observed.

The township committee, for aught that appears, have incurred by this contract an obligation in excess of the appropriation, and the resolution and contract will therefore be set aside, with costs.