# NELSON PERIN

*v.*

## AUGUSTUS A. PARKER.

*Filed at Ottawa November 15, 1888.*

126  201
153  468
126  201
163  662
126  201
68a 573

1. BOARD OF TRADE—*sale of grain for future delivery—rights as between broker and principal concerning margins.* A party acquainted with the custom and usage of the Chicago Board of Trade, employed a broker to sell for him a large lot of corn on such board, for future delivery, which sale was made without any margins being demanded by the broker, but nothing was said or done showing a waiver of the right of the latter to demand the same, when deemed expedient, to protect himself. On an advance in the price of the grain before the time for delivery, the seller having no corn on hand to be delivered, the broker demanded of his principal a margin of $3500 to make him safe. The latter refused to advance the same, saying he would pay losses when the differences should be determined, and not before. The price still advancing, the broker made two other demands for still higher margins, which being refused, he purchased the corn necessary to fill his contracts of sale, and sued his principal for his services, and for money paid to his use in purchasing the grain. It was *held*, that the subsequent demands for margins, even if unreasonable, were not necessarily, or as a matter of law, a waiver of the first demand, so as to preclude a right of recovery.

2. In such case, even if the several notices of demands by the broker were not sufficiently definite, and some of them for too large a sum, the principal, by deciding he would furnish no margins until differences were settled, and so notifying the broker, was precluded from taking advantage of such objections on the trial.

3. If the notice of the principal had been absolute and unconditional that he would not pay anything for losses, it would have been the duty of the agent or broker to use due diligence in purchasing the corn to meet his contract, and thus prevent increase of loss to himself and principal; but notice that the latter would not pay losses until the differences were adjusted, is not to be regarded as an absolute refusal, and the broker might properly buy the corn necessary to fill his contract at any time before he was bound to deliver, and hold his principal liable for the loss.

4. Where a person has paid money under an indemnity from another person, it is, in general, equivalent to a payment made at his request, the indemnity operating as a request. So the employment of a broker

to buy and sell shares or grain, operates as a request to make all payments required by the rules of the stock exchange, or other share market, in the course of the execution of the employment, with a promise of repayment.

5. Where a broker is employed by his principal to make sales of grain for future delivery, and makes contracts of sale in his own name, as contemplated, if he carries the contracts until their maturity, so that he is obliged to deliver the grain, and he purchases the grain to enable him to perform his contracts, the law will imply a promise by the principal to pay him any loss he may sustain on the contracts made by his direction.

6. Where a broker sells grain for his principal, to be delivered at a future day in a market, the custom and rules of which require the seller to advance ten per cent margins on the price, and further security from time to time, to the extent of any advance in the market value above the contract price, and there is an advance in the value, and the principal, upon proper demand, refuses, unconditionally, to advance the margins which his broker is liable to be called upon to pay, the latter will not be bound to carry the risk until the maturity of the contract, but may at once go into the market and purchase grain with which to discharge his contracts of sale, and the principal will be liable to him for the difference between the cost of such grain and the contract price, with interest, as for money paid to his use upon his implied request.

7. Where the rules and customs of a particular market authorize the purchaser of grain, to be delivered at a future day, to demand ten per cent margins of the seller, and other margins upon an advance in the market value of the grain before the time of delivery, and the broker of a party sells grain for him for future delivery, and on a rise of the market value demands the advance of margins to make himself safe, which the principal refuses to pay, and the broker buys grain with which to perform his contract, and sues for his commissions and the loss he sustains, an instruction for the defendant, which by necessary implication excludes from the consideration of the jury, in considering the reasonableness of the demand of margins, the right of the plaintiff to demand ten per cent margins on the contract price, and limits his right to margins based upon the differences between the contract price and the market price, is erroneous, and properly refused.

8. SAME—*reasonableness of demand for margins — as a question of fact.* In an action by a broker against his principal, to recover for moneys advanced by the former to complete his contract of sales made for the latter, the question whether the demand of the broker for margins is a reasonable one, is a question of fact for the jury to determine, from the statements in the written demand, and their context, and from a consideration of all the surrounding circumstances, and not one of law, for the court.

9. COMMON COUNTS—*recovery thereunder.* In case a broker, employed to make sale of grain for future delivery, advances money to buy the grain to fill the contract, such advance will be regarded as money advanced upon the implied request of the principal, and therefore may be recovered under the common counts.

10. INTEREST—*on money paid to use of another, or for him.* Where ·a person pays out money in execution of a contract he has made in behalf of another, under an implied promise of repayment by the latter, so that it is recoverable under the common counts as money advanced by the former to the use of the latter at his request, the former (the party so paying) is entitled to interest on the. same, under section 2 of the statute relating to interest.

11. INSTRUCTIONS—*repeating.* There is no error in refusing an instruction, the grounds or principles of which are substantially embraced in others which are given.

12. So on the question of the waiver of a demand for margins, by a broker, of his principal, it was objected that an instruction for the plaintiff contained no qualification on that question. The question, however, was fully covered by other instructions, and the jury, in answer to a special question put to them, found there was no.waiver of the demand: *Held,* that from the special finding it was evident the jury were not misled by the omission in the instruction complained of.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

This is a writ of error to the Appellate Court for the First District. The facts of the case are sufficiently stated in the opinion which was filed in that court, delivered by McALLISTER, J., and which is as follows:

"This was an action upon the common counts in assumpsit, brought by Parker, a commission merchant of Chicago, doing business on the Board of Trade, against Perin, a resident of Cincinnati, Ohio, to recover for·money advanced by the former for the latter, and commission earned, in the course of the execution by Parker of the employment of him as such merchant by Perin, December 30, 1882, to sell for the latter, upon the Chicago Board of Trade, 50,000 bushels of corn, of which 25,000 bushels were to be delivered in January, and the same

quantity in May then next. Upon trial by jury, the plaintiff below had a verdict and judgment for $6114.28, and the defendant brings error to this court, assigning various errors, under which the most vital questions arise upon the points made by counsel for plaintiff in error: First, that as respects the alleged advances of money, the plaintiff below failed to make out a cause of action by his evidence; second, that what plaintiff below claimed as advances of money for the defendant at his implied request, were not such in legal contemplation, and if any recovery could be had for what plaintiff below was compelled to pay out in taking care of the said contracts of sale for defendant, such recovery could only be upon a *special*, and not upon the *common* counts; third, that interest on the money so paid was not allowable. Other points for reversal were made, which will be noticed as we proceed.

"The first question, then, is as to whether the plaintiff below established, by his evidence, a cause of action as respects the money so expended. It clearly appears, from the evidence, that at the time Perin employed Parker to sell for him, on the Chicago Board of Trade, the corn in question, the former was well acquainted with the usages, customs and methods of doing business on that board; that no margins were asked for by Parker, or furnished by Perin; and it is not pretended that anything was said or done which could be construed into a waiver of Parker's right to have Perin furnish margins, if the exigencies of the business made it expedient to do so. It appears that Parker made sale of the corn, for future delivery, immediately upon receiving the order of Perin, and in strict compliance therewith, and informed the latter that he had done so; that Parker did not have any of the corn at the time, and that from the usages of the business, with which Perin was familiar, it was to be presumed to have been within the contemplation of the parties that Parker should go upon the board of trade, and buy, on Perin's account, the corn requisite to a delivery when the contracts of sale were closed up. It

appears, that from the time such sales were made the price of corn continually advanced in the market, so that by January 13, 1883, the deal was against Perin in the sum of $3000 and upwards. Parker then demanded of Perin that he supply margin in the sum of $3500. The latter refused, saying that he would pay losses when differences were settled or determined, and not before. He put such refusal solely upon the ground that Parker had been ordered, January 4, 1883, to buy in the corn for January delivery, and had violated his duty in that respect. That claim was shown to have been entirely without foundation. January 15, Parker made another demand on Perin for $4000 margins, by draft, which the latter refused to accept. Then Parker went to Cincinnati, and, January 16, had two personal interviews with him, and there asked him again for margins, and Perin peremptorily refused, assigning for a reason the said baseless claim that Parker had violated his duty in failing to buy in the corn for January delivery. Then, January 18, Parker, by telegram from Chicago, demanded $6000, to be sent by telegram by 12:30 o'clock of that day, and gave him notice that if this demand was not complied with, he should buy in the corn for Perin's account. That telegram was not received by Perin until 12:15, and then it was impracticable for him to comply. He did not, and he does not, pretend that he would if it had been received in time. On the contrary, the evidence tends to show that he at no time afterward intended to retract the notice he gave Parker January 13, that he should pay no losses until differences were settled or determined.

"When this case was before us upon a former writ of error, (*Perin* v. *Parker*, 17 Bradw. 169,) we held, that upon the undisputed facts, the notice and demand of January 18 were not reasonable; that such being the case, it should have been submitted to a jury to determine whether or not Parker, by his acts and words, had waived his rights upon his previous demands for margins, and whether or not Perin had, before said

last demand, retracted his notice to Parker that he would not supply any. The judgment in Parker's favor was reversed, and the cause went back for a second trial. Upon this last trial those questions were specifically submitted to the jury,— as to the waiver, by requests to find specially; as to the retraction, by instruction asked on behalf of defendant. The jury found, by their special verdict, that there was no waiver, and by their general verdict, that there was no retraction of said notice of refusal to put up margins.. It is contended by counsel for Perin, that the special finding of the jury, that there was no waiver by Parker of any of the demands for margins made by him prior to that of January 18, is unsupported by the evidence,—that they were respectively insufficient, if not waived.

"A waiver is the intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it. (*Hoxie* v. *Insurance Co.* 32 Conn. 40; *Lewis* v. *Insurance Co.* 44 id. 72; *West* v. *Platt*, 127 Mass. 372.) A subsequent demand is not necessarily a waiver of a prior one. (*Hull* v. *Hobart*, 16 Me. 164.) The fact that each successive demand made by Parker was for an amount larger than that of the next preceding one, can not be considered as of controlling effect, because such increase of amount was properly due to the fact that the market price of corn was advancing from day to day. In view of that circumstance, the successive demands were not so inconsistent as to require the jury to find, or this court to adjudge, that the last was a waiver of all the previous demands.

"But counsel for Perin now insist that the several notices or demands were not sufficiently definite, and that some of them were for a larger amount than he was entitled to ask for. Even if that were so, having decided that he would furnish no margins until differences were settled or determined, and so notified Parker, he was precluded from taking advantage of such objections at the trial.

"It is also urged by counsel, that it was the duty of Parker to have bought in the corn within a reasonable time after receiving the notice of refusal by Perin, January 13, and thus prevented the subsequent increase of loss. We are inclined to the opinion, that if the notice had been absolute and unconditional, it would, upon settled principles of the law of principal and agent, have been the duty of Parker to use due diligence to prevent such increase of loss to himself and his principal. But the notice, as given, can not be so regarded.

"The next question is, whether the money paid by Parker in buying in the corn in question can be regarded as money advanced upon the implied request of Perin, and so become a debt recoverable under the common money counts. The rule applicable to such a case as this, is the rule which pervades the whole law of principal and agent, viz., that the principal is bound to indemnify the agent against the consequences of all acts done by him in pursuance of the authority conferred upon him. *Taylor* v. *Stray*, 2 C. B. (N. S.) 195; Leake on Contracts, 55. It is said by that excellent author, on the same page: 'Where a person has paid money under an indemnity from another person, it is, in general, equivalent to a payment made at his request, the indemnity operating as a request.' (*Brittain* v. *Lloyd*, 14 M. & W. 762; *Lewis* v. *Campbell*, 8 C. B. 541; *Monle* v. *Garrett*, L. R. 5 Ex. 132; 7 id. 101; 39 L. Q. Ex. 69.) Leake (p. 56,) further says: 'The employment of a broker to buy and sell shares operates as a request to make all payments required by the rules of the Stock Exchange, or other share market, in the course of the execution of the employment, with a promise of repayment.' In that statement the author is supported by the following cases: *Bayley* v. *Wilkins*, 7 C. B. 886; *Westropp* v. *Solomon*, 8 id. 345; *Taylor* v. *Stray, supra; Smith* v. *Lindo*, 5 C. B. (N. S.) 587.

"It surely needs no argument to prove that the same rules above adverted to are applicable to a case where a person employs a commission merchant to deal for him, either in buying

or selling grain or other products, upon the Chicago Board of Trade. The case shows that the plaintiff below acted, in buying in the corn, under the circumstances shown, entirely in conformity with the rules and usages of said board of trade, with which the defendant was familiar when he employed him. What the plaintiff was compelled to pay out in doing so, was, therefore, in consequence of the employment, in contemplation of the parties, and must be considered as in pursuance of the authority conferred by such employment, for which payment the defendant had impliedly promised to indemnify the plaintiff. The sums so paid out by the plaintiff, therefore, became a debt, recoverable against the defendant, upon the common money counts, as money advanced by the plaintiff to the use of the defendant, at his request; and that being so, the plaintiff was entitled to interest upon it, under section 2 of the statute concerning interest.

"Counsel for defendant below complain of error in the instructions to the jury. We do not deem it our duty to enter upon a discussion of the points specified by counsel, for in this case the plaintiff clearly established his right to recover the full amount which he did recover, not only by competent evidence, but evidence which was wholly uncontradicted. The defendant made no pretense of any defense but that of standing upon the general issue, and requiring the plaintiff to prove his case. That was done by undisputed testimony, showing a right of recovery under settled rules of law. In such a case we think error in the instructions becomes entirely immaterial.

"We have considered the exception taken to the action of the court in sending the jury back to supplement what they had omitted in the verdict as first returned. Under the circumstances, as shown by the bill of exceptions, we think there was no error in such action of the court.

"The judgment should be affirmed."

Messrs. Dexter, Herrick & Allen, and Mr. Horace H. Martin, for the plaintiff in error:

Whether there is any evidence tending to show a cause of action, is a question of law. The court refused to instruct the jury to find for the defendant, and this ruling is reviewable here. _Simmons_ v. _Railroad Co._ 110 Ill. 340; _Frazer_ v. _Howe_, 106 id. 573; _Launtz_ v. _People_, 113 id. 137; _Railroad Co._ v. _Coble_, id. 115; _Railroad Co._ v. _Lewis_, 109 id. 128; _Railway Co._ v. _Jackson_, 3 App. Cas. 193; _Randall_ v. _Railroad Co._ 109 U. S. 478.

The fourth and fifth of the plaintiff's instructions were erroneous, and the court erred in refusing defendant's third, sixth, eleventh, thirteenth and fourteenth instructions. Defendant's eighth instruction was improperly given, as modified by the court.

Under the common counts, a plaintiff can not recover damages for the breach of a contract. _Brand_ v. _Henderson_, 107 Ill. 141; _Cast_ v. _Roff_, 26 id. 452; _Francisco_ v. _Wright_, 2 Gilm. 691; _Seckel_ v. _Scott_, 66 Ill. 106; _Ward_ v. _Taylor_, 56 id. 494; _Burnham_ v. _Roberts_, 70 id. 19; _Trustees_ v. _Shaffer_, 63 id. 243; _Russell_ v. _Gillmore_, 54 id. 147; _Maxwell_ v. _Longenecker_, 89 id. 102; _Meyers_ v. _Schemp_, 67 id. 469; _Lightfoot_ v. _Creed_, 7 Taunt. 268.

Interest can be recovered in actions _ex contractu_, only where there has been an express promise to pay it, or in the cases specified in the statute. _Alcohol Works_ v. _Sheer_, 104 Ill. 586; _Sammis_ v. _Clark_, 13 id. 544; _Hitt_ v. _Allen_, id. 592; _Chicago_ v. _Allcock_, 86 id. 384; _Railroad Co._ v. _Cobb_, 72 id. 148; _Stern_ v. _People_, 9 Bradw. 411; _Pekin_ v. _Reynolds_, 31 Ill. 529; _Aldrich_ v. _Dunham_, 16 id. 403.

The statute gives interest on money due on the settlement of accounts. There has been no settlement here. Perin has always denied his liability. It is only when parties have agreed on the balance, that interest is recoverable on a "settlement

of accounts." *Alcohol Works* v. *Sheer,* 104 Ill. 586 ; *Flake* v. *Carson,* 33 id. 518 ; *Clement* v. *McConnel,* 14 id. 154 ; *Meyers* v. *Walker,* 24 id. 137 ; *Aldrich* v. *Dunham,* 16 id. 403.

Mr. H. S. Munroe, for the defendant in error:

There was no error in the instructions given for the plaintiff below, nor in the refusal to give defendant's as asked.

When the verdict is clearly right it will not be disturbed for errors in the instructions. *Boynton* v. *Holmes,* 38 Ill. 59 ; *Schwarz* v. *Schwarz,* 26 id. 81 ; *Beseler* v. *Stephani,* 71 id. 400 ; *McConnel* v. *Kibbe,* 33 id. 177 ; *Curtis* v. *Sage,* 35 id. 32 ; *Coursen* v. *Ely,* 37 id. 338 ; *Pahlman* v. *King,* 49 id. 266 ; *McKichan* v. *McBean,* 45 id. 228 ; *Hall* v. *Sroufe,* 52 id. 421 ; *Graves* v. *Shoefelt,* 60 id. 462 ; *Hewitt* v. *Jones,* 72 id. 218 ; *Burling* v. *Railroad Co.* 85 id. 18.

The objection that no recovery can be had under the common counts, comes too late. It should have been made in the trial court. *Mager* v. *Hutchinson,* 2 Gilm. 266 ; *Stark* v. *Brown,* 101 Ill. 395 ; *East St. Louis* v. *Underwood,* 105 id. 308 ; *Montague* v. *Selb,* 106 id. 49 ; *Hannas* v. *Hannas,* 110 id. 53 ; *Pry* v. *Pry,* 109 id. 466 ; *Honore* v. *Wilshire,* id. 103.

The common counts were all that were required. 1 Chitty's Pl. 295 ; *Underhill* v. *Gaff,* 48 Ill. 198 ; *Fowler* v. *Deakman,* 84 id. 130 ; *Bank* v. *Hart,* 55 id. 62 ; *Bishop of Chicago* v. *Bauer,* 62 id. 188.

Interest may be recovered without being claimed in the declaration, if the amount claimed is large enough to include it. *Heiman* v. *Schrœder,* 74 Ill. 158 ; *Tucker* v. *Page,* 69 id. 183.

Interest has been allowed on money advanced by a joint obligor, (*Harvey* v. *Drew,* 82 Ill. 606, and *Simpson* v. *Gardiner,* 97 id. 237,) and on money collected. *Chapman* v. *Burt,* 77 Ill. 337 ; *Ketcham* v. *Thorp,* 91 id. 611.

Mr. JUSTICE BAKER delivered the opinion of the Court:

We are entirely satisfied with the conclusion reached by the Appellate Court, and concur in and adopt the opinion filed in that court. In view, however, of the criticisms made upon that opinion in the additional brief and argument presented to this court, we will further· notice some of the questions of law involved in the case.

The right of Parker to recover under the common counts, for money paid and advanced, is strenuously denied. It is evident that if Parker had carried the contracts until their maturity, he would then have been obliged to deliver the corn called for by them, and that then there would have been an implied request from Perin to him to settle the deals, and an implied promise to pay him. It is claimed, however, that Parker being under no legal obligation to buy corn and perform the contracts before they matured, no request by Perin to him to pay out money can be implied in law, and consequently, there can be no implied promise by Perin to repay it, and an action for money paid will not lie.

Parker, as agent for Perin, and acting under his orders, sold the corn for Perin, and, under the rules of the board of trade and the custom of the Chicago market, he was personally bound to the purchasers on these contracts of sale. Parker and Perin were dealing with reference to such rules and such custom, with which they were both perfectly familiar. The rules of the board of trade provided, that on time contracts purchasers should have the right to require of sellers ten per cent margins, based upon the contract price of the property bought, and further security, from time to time, to the extent of any advance in the market value above said price. The price of corn had been rapidly advancing since the date of the sales. Parker either had deposited margins upon the contracts, or was liable to be called on for the ten per cent and the additional margins by the persons to whom he had sold the corn. The evidence

does not seem to disclose whether or not the purchasers had either received or called for margins. Even if they had not, yet there was an existing legal right in them to call on Parker for margins, and a legal liability upon the latter, within the next banking hour thereafter, to deposit the margins called for, and also, within that time, deposit with the secretary of the board, or the parties calling for such deposits, duplicate certificates of deposit, signed by the treasurer of the board or an authorized bank.

We must assume the facts to be, as found by the jury in the trial court, and by the Appellate Court, that defendant in error had made proper demands for margins, which had never been waived, and that plaintiff in error had failed and refused to comply with these demands. After the failure of the principal to put up margins when called for, and his absolute refusal so to do, and the return, unpaid and protested, of the draft drawn therefor, it became the duty of the commission merchant to use diligence in order to prevent increase of loss to himself and his principal. It is clear that the agent was not bound, himself, to bear the burden and the risk of the contracts made by the express order of his defaulting principal, through the whole of the options, without power to relieve himself from the personal liability imposed upon him by the contracts.

In view of the relation of principal and agent existing between the parties, the personal liability assumed by the agent upon the contracts made, the duty of the principal to indemnify his agent, and the rules of the board of trade, and the usage and custom of the market in which they were dealing, we must hold that when Perin ordered his agent to make the contracts, he not only impliedly agreed to furnish margins when demanded, but also impliedly agreed that if he failed and refused to put up margins when called for, then the agent should be authorized, without waiting for the maturity of the contracts, to buy corn for the purpose of filling such contracts. If there was such implied authority, then that authority, fol-

lowed by the refusal of the principal to advance margins, was equivalent to a request to his agent to purchase immediately, or within a reasonable time, at the market price, the corn called for by the contracts, and necessarily implied a promise to pay the agent the difference in price between the corn sold and that purchased. This difference in price would properly be regarded as money paid by the agent for the use of the principal, and at his request.

This case is clearly distinguishable from *Lightfoot* v. *Creed*, 8 Taunt. 268. There, the parties were the vendor and vendee of stock, which was not transferred in conformity with the contract. The point ruled was, that the vendee had no implied authority from the vendor to purchase other stock to the same amount, and hold him for the difference as money paid to his use, and that the plaintiff should have declared specially on the contract. Here, the parties were principal and agent, and the dealings were with reference to the custom and usage of a particular market, and the employment and the subsequent conduct of the principal had the effect of a request to the agent to make the purchases when he did, with a promise to pay him the difference in prices. The claim here recovered by defendant in error was within the contemplation of the parties at the time of the employment to make the contracts of sale.

We have carefully examined the record in respect to the rulings of the court upon the instructions, and will briefly state the result of such examination.

The court refused to give the third instruction asked by plaintiff in error, but the ground was substantially covered by the seventh instruction which was given.

The refusal of the court to give the sixth instruction was justified by the fact that the legal principle involved in it was given to the jury in the fourth and fifth instructions, and also by the further fact that it, by necessary implication, excluded from the consideration of the jury, in considering the reasonableness of the demands for margins made by defendant in

error, his right to demand ten per cent margins, based upon the contract prices, and expressly limited his right to margins predicated upon the difference between contract price and market price.

The substance of the eleventh instruction submitted to the court had already been given in both the seventh and ninth instructions.

In the thirteenth instruction the court was asked to instruct the jury, as matter of law, that any statement by Parker in any letter or telegram to Perin, in evidence, that he, Parker, would draw a draft on Perin, was not a reasonable demand for margins, and was not a reasonable notice to him to put up margins. It was a question of fact, for the jury to determine, from such statements and their context, and from a consideration of all the surrounding circumstances, whether or not the demands were reasonable. It was not error to refuse the instruction.

The fourteenth and seventeenth instructions were properly refused, and for the reason, that under the statute defendant in error was entitled to receive interest on the moneys he had advanced for the use of plaintiff in error.

Complaint is also made of the fourth and fifth instructions for defendant in error. It is objected, that while there was evidence of waiver sufficient to go to the jury, yet said fourth instruction, in stating the hypothetical case of the plaintiff below, contained no qualification on the subject of waiver, and thereby took the question of waiver from the jury. The jury was not only very fully instructed on this question of waiver in numerous other instructions of the court, but they, in their answers to the special questions submitted to them, returned into court a special finding against plaintiff in error upon this question of waiver. The fact that they made this special finding, renders it absolutely certain that they were not misled by the omission under consideration. The other objections urged

to this fourth instruction are technical, and do not require particular notice.

The fifth instruction for defendant in error, in order to have been entirely accurate, should have contained the additional words, "and if the jury further believe, from the evidence, that Parker did sell the corn;" but the plain implication from the instruction, as given, was, that the jury must believe that Parker sold the corn, and the undisputed evidence was that he did sell it. It is manifest, therefore, that the jury were not, and could not have been, misled by the instruction.

The eighth instruction for plaintiff in error was modified by the court before it was given. No complaint is made of the action of the court in refusing to give it in the form in which it was asked. Objection, however, is urged to the modification made by the court. This modification was clearly inaccurate, and was probably made through inadvertence. The inaccuracy was, however, fully obviated by the fourth, seventh and ninth instructions given for plaintiff in error,—in fact, these latter instructions rendered the modification wholly immaterial, as they excluded from the jury any right of recovery based upon the telegram of January 18 as a reasonable demand.

Our conclusion is, that there was no manifest error in the rulings of the trial court upon the instructions, and that the jury was very fully and fairly instructed on behalf of plaintiff in error.

In our opinion the Appellate Court properly affirmed the judgment of the circuit court.

*Judgment affirmed.*

Mr. JUSTICE BAILEY having heard this case in the Appellate Court, took no part in this decision.

Mr. JUSTICE SHOPE: I do not concur in this opinion, or conclusion reached.