GANCHOFF and wife, Appellants, vs. BULLOCK, Respondent.

*April 11—May 7, 1940.*

*Royden E. Webster* of Milwaukee and *William M. Hayes* of Baraboo, for the appellants.

A separate brief was filed by the appellant Christo P. Ganchoff in *pro. per.*

For the respondent there was a brief by *Churchill, Churchill, Davis & Rapkin* of Milwaukee, and oral argument by *W. H. Churchill.*

WICKHEM, J.   Plaintiffs' action involves the validity of a second mortgage given by plaintiffs to defendant as part of a refinancing transaction involving a mortgage to Home Owners' Loan Corporation (hereinafter called "HOLC"). Plaintiffs contend that the second mortgage in question was without the consent of the HOLC and against public policy.

The facts are not in dispute and are briefly as follows: The property involved consists of four acres of land in Bay View owned by plaintiffs.   Prior to the transactions in question the south two acres of this land were subject to a mortgage to the Bay View Building & Loan Association in the amount of $3,100, and to a second mortgage of $1,500 to J. C. Bullock.   The north two acres were subject to a mortgage in favor of the Bay View Building & Loan Association in the amount of $2,500.   On March 15, 1934, application was made by plaintiffs for an HOLC loan.   A survey showed that a house on the northeast corner of the

four-acre tract was over the north line of the tract, and for that reason HOLC declined to include that portion in a mortgage. After another survey and some negotiations as to the size of the excluded portion, HOLC finally consented that a plot 80x200 feet in the northeast corner of the property be excluded from the new mortgage. In a letter by the HOLC informing plaintiffs that a division of the property could be made and a portion of it excluded from the HOLC mortgage, the following statement is made:

"Under this plan it will be necessary that you make arrangements with your present mortgagees whereby they will retain a lien on that part of the property not taken by us for any balance they may have due after our refinancing."

Negotiations upon the above matters extended into the early part of 1936. On February 21, 1936, plaintiffs and Clarence J. Bullock, coexecutor of the estate of J. C. Bullock, as well as secretary of the Bay View Building & Loan Association, entered into a written agreement, (1) that the HOLC mortgage should be a first mortgage on all of the four-acre tract except the 80x200-foot strip. This mortgage was to be in the sum of $3,520. (2) That plaintiff and his wife would execute to Mabel J. Bullock a second mortgage on the 80x200-foot strip in the sum of $1,074. (3) That the first mortgage of the building and loan association would remain outstanding so far as the 80x200-foot strip was concerned for a balance of $1,986.88, which would be a first mortgage. This agreement was witnessed by Mr. Edward Minor, attorney for HOLC.

The estate of Bullock agreed to take $757 in HOLC bonds for the portion of its mortgage over and above the $1,074. The balance of the bonds went to the Bay View association to reduce its mortgages. The consent by the Bullocks to take HOLC bonds included the following statement: ·

"The undersigned represents that he has not received and will not require of, or accept from the applicant any second mortgage, or other instrument evidencing any portion of the

aforesaid obligation or the payment of any money or any other additional consideration except only as follows."

The blank immediately following this was not filled in. As a result of the transactions, HOLC holds a first mortgage of $3,520 on all of the four acres except 80x200 feet on the northeast corner. The building and loan association has a first mortgage of $1,986.88 on the 80x200-foot tract, and Mabel J. Bullock a second mortgage on this tract of $1,074. This makes a total indebtedness of $6,574 against the original indebtedness of $6,321.65, the difference being accounted for by interest balances which accumulated during the nearly two years required to close the deal.

Plaintiffs' whole case rests upon the claim that the Bullock mortgage constituted a second lien which HOLC neither knew about nor consented to and which is therefore contrary to public policy. The trial court found as a fact that the HOLC knew and consented to this mortgage and the evidence supports that finding. This is not the case of a collusive agreement between the mortgagor and his existing secured creditors by which the latter retain a secret lien upon the property which the HOLC loans money upon. Concededly, HOLC is a governmental instrumentality for the relief of homeowners and the preservation of their ownership in homes occupied by them. It is contrary to public policy for an existing mortgagee to take HOLC bonds for a portion of the debt and then by an agreement without the knowledge or approval of HOLC further incumber the equity of the mortgagor. In this case, however, the portion of the land covered by the HOLC mortgage was completely cleared of all liens. Neither the mortgages of the loan association or Bullock interfere in any way with the property covered by the HOLC loan. It is obvious from the negotiations that HOLC contemplated and expected when it divided the property that the existing mortgages would constitute liens upon the 80x200-foot strip to secure balances not discharged by the HOLC loan. That was the sugges-

tion of the HOLC appraiser in the Milwaukee district. It was the understanding of Mr. Minor, attorney for the HOLC, who closed the transaction. Some point is made of the fact that in the instrument accepting the bonds there is a representation by the Bullocks that no second mortgage is retained. This statement apparently applies to the property covered by the mortgage. However, even if it does not, the knowledge and understanding of the HOLC is sufficiently evidenced by the negotiations. It was at first proposed by HOLC that the strip excluded be 50x130 feet, and the negotiations had to do with the insistence of the mortgagees that this strip be enlarged, and ultimately it was enlarged. The only purpose of enlarging it was to give greater security to existing mortgagees who were to retain liens upon this strip. The evidence is overwhelming that the transaction took place with the consent and approval of HOLC. There was nothing secret about it, nothing undisclosed. There is no fraud charged in the complaint, and the evidence warrants the trial court's conclusion that everybody involved, including plaintiffs, understood the situation perfectly.

Some point is made of the fact that Mr. Minor was simply an attorney for the closing of transactions and that under the regulations of the HOLC he is not an employee and his knowledge is not imputed to HOLC. The contention is without merit. The fact that he was not an employee and was paid upon a fee basis does not derogate from his power to perform such steps as are necessary to close the transaction. Even if plaintiffs' contention be granted, it does not affect the validity of the trial court's findings. Mr. Minor knew and consented to the Bullock mortgage but so did other representatives of HOLC involved in the transaction. It should be noted that HOLC has not and does not assume to have the power to prohibit second mortgages except as a condition to granting a loan secured by a first mortgage, and it does not in fact prescribe this prohibition as a condition unless, (1) the second mortgage is greater than the equity

over and above the corporation's mortgage; or (2) the terms are such as to create a hardship upon the mortgagor or deprive him of a reasonable opportunity to pay the second mortgage. It is extremely doubtful if either condition applied here because there was to be no second mortgage upon the property secured by the HOLC first mortgage. At all events, however, the full duty of creditors who propose to retain a lien upon portions of the debtor's property is discharged if HOLC is advised of the situation so that if proper it may decline the loan unless the plans of the creditors are abandoned or modified. Hence, it is the secret mortgage, collusively agreed for, that is void as against public policy because it has deprived HOLC of the data upon which its decision to loan must be based if it is to carry out the beneficent purposes of the law. Here there was nothing secret or collusive about the transaction and HOLC was fully advised of the situation. Further than this, there were no liens retained upon the portion of the premises covered by the HOLC mortgage. We conclude that the trial court correctly determined that the second mortgage here involved was not void as against public policy. This is in accord with the following cases as we read them: *McAllister v. Drapeau,* 14 Cal. (2d) 102, 92 Pac. (2d) 911; *Council v. Cohen* (Mass.), 21 N. E. (2d) 967; *Bay City Bank v. White,* 283 Mich. 267, 277 N. W. 888; *Ridge Investment Corp. v. Nicolosi,* 15 N. J. Misc. 569, 193 Atl. 710. In the *Bay City Bank Case* the court said (p. 275):

"The transaction did not minimize the security taken by the Home Owners' Loan Corporation incident to its mortgage. And still more important, the transaction on the part of the plaintiff in the instant case was in no way characterized by fraud, secrecy, or collusion. On the contrary the details were fully revealed to the Home Owners' Loan Corporation representative, pending the negotiation of the loan from the corporation. Under the circumstances we are unable to find any justification for holding that the obligation

which plaintiff seeks to enforce is void on the ground of public policy."

It is suggested that the consent by the Bullocks to accept a certain amount of the HOLC bonds amounted to an accord and satisfaction, but upon the whole evidence it is perfectly obvious that this is not true. The most that can be made out of the evidence is that the Bullocks were willing to accept the bonds as consideration for the complete release of such portion of the four acres as was covered by the HOLC mortgage but insisted upon retention of a lien upon that portion already covered by this mortgage and not to be included in the HOLC mortgage.

*By the Court.*—Judgment affirmed.