*Reversed in part and remanded with directions.*

---

**Ed. Haugens, Appellee, v. Mary E. Foster, Appellant.**

**Gen. No. 9,863.**

Opinion filed August 19, 1943.

ROBERT A. BARNES, of Lacon, D. M. GREGG, of WENONA, and C. B. CHAPMAN, of Ottawa, for appellant.

KENTON BROWN, of Wenona, and H. L. RICHOLSON, of Ottawa, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court. This case involves the validity of a promissory note

which included in the principal thereof the sum of $500 which was part of a prior note for $5000, and for which appellee accepted $4500 when the makers procured a new loan from the Federal Land Bank of St. Louis. The cause is here by appeal from a judgment of the circuit court of Marshall county in favor of appellee for the amount of the note, except the $500 mentioned. Appellee has assigned a cross-error on the failure to include the $500 in the judgment.

The record discloses that on April 25, 1934, Thomas B. Foster and Mary E. Foster, his wife, who is appellant here, executed their promissory note of that date to Ed. Haugens, appellee, in the sum of $2463, secured by a mortgage on real estate in the State of South Dakota. At that time Foster and Minnie B. Kennedy, his sister, owned, as tenants in common, 80 acres of land in Marshall county, Illinois. Foster and his wife were also indebted to appellee in the further sum of $5000, evidenced by their promissory note, dated April 25, 1934 and secured by a mortgage on Foster's undivided half interest in the Marshall county land.

In June 1935, Foster and Minnie B. Kennedy applied to the Federal Land Bank of St. Louis for a loan on the Marshall county land, which was approved for $4500 and a land bank commissioner's loan of $3000 was also granted them. The transaction was handled through the Marshall County National Farm Loan Association, in the name of Minnie B. Kennedy as the applicant. In order for the loan to be consummated the lender required a signed creditor's statement from appellee, which contained the following:
as an obligation
"You hold a 1st mtg./of Minnie B. Kennedy, Toluca, for $5000.00. Kindly state below the earliest date said indebtedness can be paid, giving the amount which you will accept in full satisfaction of the same

on or before said date, or thereafter, and return this statement to me.

(Signed) _____

(Secretary-Treasurer or Loan Correspondent.)

To Sam. W. Crabtree,

Secretary-Treasurer or Loan Correspondent

and to the Federal Land Bank of St. Louis

and/or Land Bank Commissioner.

The amount of the indebtedness referred to above is $5000 as unpaid principal . . . upon which date or after which date said debt can be paid. . Said indebtedness is evidenced by a Note due on the ——— day of ——— 19 ——. The debt is secured by a Real Estate mortgage which is recorded in book ——— page —— of the records of Marshall County, State of ———. Upon payment to the undersigned of $4500 . . . said sum will be accepted in full satisfaction of this claim.''

After provision for assignment and delivery of insurance policies with the release and other papers, and an agreement to take the amount in Federal mortgage corporation bonds, the statement continues: ''The undersigned creditor states that no understanding or agreement exists between him and the applicant that a note or other evidence of indebtedness will be given for the difference, if any, between the amount paid or to be paid the creditor and the amount of the creditor's original claim, and agrees that directly or indirectly no note, mortgage or other consideration will be received from the debtor, incident to such acceptance, other than the consideration paid by The Federal Land Bank and/or the Land Bank Commissioner, and that when said consideration is paid all claims of this creditor against the above debtor shall have been satisfied in full.''

The indebtedness on the South Dakota mortgage was not mentioned in the creditor's statement, and it did not call for any information as to any other obliga-

tion of the debtor to appellee except the specific mortgage mentioned therein. The record shows a financial statement signed by the applicant for the loan, showing assets of $17,695, including chattel property and "Present market value of this farm ½ interest $5,000. Other farming land $10,000.00," with liabilities of "First lien on this farm $3750.00. Liens on other farms and real estate $5700.00," and a net worth of $8245. Appellee was paid $4500 when the Federal Land Bank loan was closed.

Subsequently and on June 20, 1938, Foster and his wife executed a new note to appellee for $3,523.21, secured by a mortgage on the South Dakota land, to take up the prior mortgage on that land, and included in the note certain book accounts owing to appellee, and the unpaid $500 which was a part of the $5000 debt mentioned in the creditor's statement. Foster afterward died, and on February 21, 1940, appellee took judgment by confession against appellant on the $3,523.21 note, in the sum of $4095, which included interest and attorney's fees. After the return of an execution "no property found," an affidavit for garnishment was filed, and process served on the State Bank of Wenona, which, in response to interrogatories filed, answered that it had $1985 belonging to appellant. Thereafter, on motion of appellant, leave was granted her to plead and answer the interrogatories and upon the hearing the trial court, on July 7, 1942, entered judgment, as of February 21, 1940, against appellant in the sum of $3595. This amount excludes the $500 unpaid when the Federal Land Bank loan was procured. Judgment was afterward entered against the bank in the garnishment proceeding. This appeal is from the judgment of July 7, 1942, against appellant, who contends that the entire note is void, as including an illegal consideration.

After the judgment by confession was opened with leave to defend the action, affidavits on behalf of appellant, and counter affidavits by appellee were filed

by leave of court. One of the counter affidavits of appellee states that he took the creditor's statement heretofore referred to, to "the Manager of the Marshall County Federal Land Bank office, an agent of the said Federal Land Bank of St. Louis," and advised him that "affiant was willing to sign said Creditor's Statement in so far as the $5000.00 mortgage was concerned, advising him that said Foster was also indebted to affiant as evidenced by a note and mortgage on land in South Dakota, and that he would not be willing to accept the sum of $4500.00 in full payment of that indebtedness; whereupon the agent of said Land Bank advised affiant that the signing of the Creditor's Statement was a mere matter of form, and that all the Land Bank desired was to have affiant's mortgage released so as to give the Land Bank a first lien on the Marshall County land for its loan, and the filing of the Creditor's Statement by this affiant would not affect the other indebtedness, as the said other indebtedness had not been scheduled by said Foster in the application for said loan." The affidavit also states that while the application for the loan was pending, Foster asked affiant if he would release the $5000 mortgage for the sum of $4500 to which affiant replied that he thought the mortgage was worth the full amount of $5000, but that he would accept $4500, and carry the balance over and include it in the other indebtedness, to which Foster agreed, and that the new note and mortgage were executed in pursuance of that agreement.

On the trial appellee testified, over objection to the conversation with Foster. He also testified that Sam. W. Crabtree was the secretary-treasurer for the Federal Land Bank, and that they had a conversation in reference to the loan; that he signed the creditor's statement in Mr. Crabtree's presence, and that in the conversation the question came up as to whether Foster owed the witness any more money, and that he

said: ''Yes, but the other money would be added to the rest of the account he owed me''; that he thought Mr. Crabtree knew of the South Dakota mortgage, and the witness told him (Crabtree) about Foster owing him other money and that he was not willing to sacrifice it; that he told him what he and Foster had decided to do, and that they were going to carry it all in one figure, to which Mr. Crabtree replied: ''This is a matter of form.'' His testimony in connection with the conversation with Mr. Crabtree was stricken, on appellant's motion, as an attempt to vary the terms of a valid written instrument by parol evidence.

An affidavit by Mr. Crabtree states that he is secretary-treasurer of the Marshall County National Farm Loan Association, and has never been an agent of the Federal Land Bank ''under a contract agreement''; that affiant had no authority to make any verbal agreement or promise other than those set out in the regular forms of the Federal Land Bank, and having knowledge of such, that he made no statements or promises to anybody whatsoever that the statements in any Federal Land Bank form was merely a matter of form. He was called as a witness for appellant, but did not, in his testimony, deny any part of the conversation with him to which appellee testified.

The affidavit of F. Earl Heinrich, a former employee of Mr. Crabtree, states that he was present when appellee signed the creditor's statement, and signed the same as a witness; that appellee did not, in his presence, make the statements to which he testified; and that the witness did not tell him or hear Mr. Crabtree tell him, the things mentioned in appellee's counter affidavit. The Heinrich affidavit does not purport to cover all the time that appellant was in the office, or tend to show that the conversation with Mr. Crabtree, set out in appellee's counter affidavit, and to which he testified, did not take place out of the hear-

ing of the affiant. Mr. Heinrich did not testify on the trial.

Except the testimony and the affidavit of appellee that Mr. Crabtree said the creditor's statement was a mere matter of form, his other testimony and the other matters stated in his counter affidavit were undisputed. We think the trial court erred in excluding appellee's evidence of his conversation with Mr. Crabtree. This testimony was not an attempt to vary the terms of a written instrument, but rather to show that by reason of the circumstances under which the creditor's statement was signed, the creditor's statement was, in legal effect, no agreement at all. It has been repeatedly held that parol evidence is admissible for that purpose. (*Black v. Wabash, St. L. & P. R. Co.*, 111 Ill. 351, 361; *Wabash R. Co. v. Thomas*, 222 Ill. 337; *Illinois Match Co. v. Chicago, R. I. & P. R. Co.*, 250 Ill. 396; *Toombs v. Lewis*, 362 Ill. 181, 187, 188; *Lennon v. Goodspeed*, 89 Ill. 438.) While an element of fraud was present in the first case cited, the other cases contain no such element. It is apparent that the creditor's statement was signed with the knowledge of Mr. Crabtree that Mr. Foster and appellee had agreed that the debt secured by the South Dakota mortgage and the $500 would continue as obligations of the Fosters to appellee. The counter affidavit of appellee and his testimony indicate that the book accounts, a very small item, were incurred after the loan by the land bank was made, and consequently were not covered by the creditor's statement.

The rule seems to be practically universal that where there is a secret agreement with a mortgagor who procures a loan from a Federal Land Bank or from the Home Owners Loan Corporation for the payment to the creditor of the balance of his claim not paid by the lender, and where the creditor agrees with the lender to accept the amount paid to him in full satisfaction of his claim, the agreement is void as against public

policy. (*Oregon & Western Colonization Co. v. Johnson,* 164 Ore. 517, 102 P. (2d) 928; *Bell v. Jones,* 100 Utah 87, 110 P. (2d) 327; *Kniefel v. Keller,* 207 Minn. 109, 290 N. W. 218; *Meek v. Wilson,* 283 Mich. 679, 278 N. W. 731; *Markowitz v. Berg,* 125 N. J. Eq. 56, 4 A. (2d) 410; *Ganchoff v. Bullock,* 234 Wis. 613, 291 N. W. 837.) It is equally well settled that where such an agreement is with the knowledge of the lender, the agreement is not void. (*Bay City Bank v. White,* 283 Mich. 267, 277 N. W. 888; *Dayton Mortgage & Investment Co. v. Theis,* 62 Ohio App. 169, 23 N. E. (2d) 511; *Ganchoff v. Bullock,* 234 Wis. 613, 291 N. W. 837; *Sirman v. Sloss Realty Co.,* 198 Ark. 534, 129 S. W. (2d) 602; *McAllister v. Drapeau,* 14 Cal. (2d) 102, 92 P. (2d) 911; *Brown v. Sears Roebuck & Co.,* 311 Ill. App. 490.)

This leaves for determination the question of whether Mr. Crabtree's knowledge of the agreement between appellee and Foster to continue the indebtedness secured by the South Dakota mortgage and for the payment of the $500, is imputable to the Federal Land Bank under the doctrine of agency. As a general rule, officers and agents of a National Farm Loan Association are not by law agents of the Federal Land Bank. (*Federal Land Bank of Columbia v. Gaines,* 290 U. S. 247, 78 L. Ed. 298; *Hooper v. Federal Land Bank of Columbia,* 178 Ga. 571, 173 S. E. 415; *Hinds v. Federal Land Bank of New Orleans,* 235 Ala. 366, 179 So. 194; *Gantt v. Gunter,* 225 Ala. 679, 145 So. 146.) Appellant argues from this that the knowledge of Mr. Crabtree of the agreement between appellee and Foster is not imputable to the Federal Land Bank. Section 712 of the Farm Loan Act (Code Title 12, USCA), provide for a board of not less than five directors for a farm loan association, whose duty it shall be to choose a secretary-treasurer, elect a president, a vice-president, and a loan committee of three members. It nowhere mentions a ''Loan Correspondent'' of such

an association. The creditor's statement signed by appellee is addressed to Mr. Crabtree as "Secretary-Treasurer or Loan Correspondent and to The Federal Land Bank of St. Louis and/or the Land Bank Commissioner." It is not directed to the farm loan association, and does not designate Mr. Crabtree as "Loan Correspondent" of the association. While section 714 of the act does not create the relation of principal and agent between a Federal Land Bank and a National Farm Loan Association, or its secretary-treasurer, it does not follow that the bank is without power to use the secretary of such association as its agent in a loan transaction. (*Federal Land Bank of Omaha v. Houck,* 68 S. D. —, 4 N. W. (2d) 213.)

Appellant does not claim that the Marshall County National Farm Loan Association had a "Loan Correspondent," or that it was authorized to create such a position. From the wording as to whom the creditor's statement was addressed, including the Federal Land Bank, on a form furnished by it, without mentioning the Farm Loan Association, appellee, or any one else executing the statement, might logically conclude that Mr. Crabtree, as "Loan Correspondent," was acting as the representative and agent of the bank, clothed with apparent authority to act as such. Even if he was not in fact the agent of the bank, and while reasonable diligence is required of all parties in the transaction of business, it is not enough to prevent relief that appellee might have ascertained the truth had he done all within his power. (*Winkelman v. Erwin,* 333 Ill. 636, 640.) Agency may be proved by the relation of the parties and the circumstances under which the transaction took place. (*Lake Shore Country Club v. Brand,* 339 Ill. 504, 520.) Apparent authority is as effective to bind one as a principal as is actual authority given. (*Northern Illinois Coal Corp. v. Cryder,* 361 Ill. 274, 287; *Faber-Musser Co. v. William E. Dee Clay Mfg. Co.,* 291 Ill. 240; 21 R. C. L. 907.) Under the facts and circumstances shown by this rec-

ord, we hold that the knowledge of Mr. Crabtree as to the agreement between appellee and Mr. Foster was imputable to the Federal Land Bank under the doctrine of apparent agency, and being so, the agreement was not void, but was valid and enforceable. The trial court erred in excluding the $500 from the amount of the judgment and the cross-error is sustained.

The judgment rendered on July 7, 1942 is reversed and the cause is remanded to the circuit court of Marshall county, with directions to enter appropriate orders, leaving the judgment rendered by confession on February 21, 1940 in full force and effect.

*Reversed and remanded with directions.*