FIRST CITIZENS BANK AND TRUST COMPANY OF UTICA, Plaintiff, *v.* MABEL W. SPEAKER and Another, Defendants.

Supreme Court, Oneida County, May 12, 1936.

*Dunmore, Ferris & Burgess* [*W. Chase Young* of counsel], for the plaintiff.

*George M. Speaker*, for the defendants.

CROSS, J.   On the 8th day of October, 1934, Mabel W. Speaker was the owner of a house and lot known as No. 19 Irving place in the city of Utica, N. Y.  She had owned this property for several years.  It was incumbered by a mortgage dated April 24, 1920, given to the Savings Bank of Utica in the principal sum of $7,000, upon which was due approximately $7,700.

The property was also incumbered by a collateral mortgage held by plaintiff dated June 26, 1930, executed by said Mabel W. Speaker and the other defendant, George M. Speaker, her husband.  This mortgage was for an amount not to exceed $1,000 and was recorded in the Oneida county clerk's office on the day of its date.

The property was further incumbered by a collateral mortgage held by plaintiff dated June 29, 1931, executed by said Mabel W. Speaker and the other defendant, George M. Speaker, her husband. This mortgage was for an amount not to exceed $1,500 and was recorded in the Oneida county clerk's office on July 2, 1931.

On or about April 11, 1934, the defendant Mabel W. Speaker made an application for a loan to Home Owners' Loan Corporation under the provisions of the Home Owners' Loan Act of 1933 (U. S. Code, tit. 12, §§ 1461–1468).  Such proceedings were had pursuant to that application and the Home Owners' Loan Act as resulted in an appraisal value of her said property at the sum of $8,300.

The proceedings for the loan progressed to a point on the 8th day of October, 1934, where the loan was closed by Clinton Noble, an attorney representing the Home Owners' Loan Corporation in a capacity known as " fee closing attorney."  On that date the plaintiff delivered to Noble a discharge of both of the collateral mortgages held by it and these discharges were duly filed on that date in the Oneida county clerk's office, each discharge reciting that the mortgage it discharged had been paid. " To pay, is defined by lexicographers, to discharge a debt, to deliver a creditor the value of a debt, either in money or in goods, to his acceptance, by which the debt is discharged." (*Beals* v. *Home Insurance Co.*, 36 N. Y. 522, at p. 527.)  Contemporaneously with the delivery of the two discharges, plaintiff also delivered to Noble the $2,500 note which it held against the two defendants, and the note was forwarded to the Home Owners' Loan Corporation.  The defendants on the same date executed to the Home Owners' Loan Corpora-

tion and delivered to Noble a mortgage upon the same property for the sum of $6,640, representing eighty per cent of its appraised value. On the same date the defendant Mabel W. Speaker made, and the defendant George M. Speaker indorsed, two notes payable to the plaintiff, one for $830 payable on demand, representing ten per cent of the appraised value of, and secured by second mortgage on the same property, payable in conformity with a plan prescribed by the Home Owners' Loan Corporation; the other for $1,836.43, payable three months from that date. The aggregate amount of these notes was $2,666.43 and represented the amount due on that date to the plaintiff on notes secured by the collateral mortgages plus the sum of $5.65 representing the fee for recording the $830 mortgage. No payment of either principal or interest has been made by either defendant upon either the $830 note now secured by second mortgage or the unsecured note for $1,836.43, except two payments of $7.50 each which were made on October 1, 1934, and July 31, 1935, respectively by credit of dividends collected by plaintiff on stock owned by defendant Mabel W. Speaker.

The instant action was commenced by plaintiff on or about September 26, 1935, to recover judgment against the defendants upon the unsecured note for the sum of $1,822.42, with interest thereon at six per cent from October 8, 1934.

The defendants urge as a defense that the note sued upon by plaintiff was demanded, made and delivered in violation of the Home Owners' Loan Act. A recital of the admitted acts of the parties of the 8th day of October, 1934, leads inescapably to the conclusion that the surrender and delivery of plaintiff's $2,500 note against defendants, the discharge of its collateral mortgages against them as paid, the making and delivery of the new note for $830 secured by second mortgage, the making and delivery of the secret note sued upon and the acceptance of defendants' mortgage by and procurement of the loan from Home Owners' Loan Corporation, were all constituent parts of a single transaction. The plaintiff and the defendants were and each of them was chargeable at the time with notice of the Home Owners' Loan Act. The discharge of plaintiff's mortgages as paid and the surrender of the note they secured, coupled with non-disclosure of the new note now sued upon, were material elements in this transaction which met and removed the final condition upon which the Home Owners' Loan Corporation loan was made. " The court takes judicial notice of, and the parties hereto are bound by, * * * the fact that the Home Owners' Loan Corporation, owned by the People of the United States, is strictly a relief agency to save homes from threatened or pending foreclosures, to save lifetime savings investments of home

owners in distress, to save them from becoming paupers, and is the rehabilitating agency to guard and protect the small home owner by judiciously refinancing his obligations with enough to pay all the incumbrances on his home, but limiting the new mortgage to eighty per cent of its appraisal value for the property, so he can meet his amortized mortgage by monthly payments on principal with interest." (*Jessewich* v. *Abbene*, 154 Misc. 768.)

The facts in that case differ from the facts in the instant action in that there the mortgagee received directly the bonds of the Home Owners' Loan Corporation for an amount less than due him.

The principle, however, in both cases is the same. The plaintiff here by the transaction was put in a better secured position to collect something rather than to be wiped out by a first mortgage foreclosure. There was a new consideration from a new party. (*Partridge* v. *Moynihan*, 59 Misc. 234, at p. 236.)

In the *Jessewich* case the court pronounced in clear language the policy of the government established for the public weal by the statute itself. The trend of judicial decisions interpreting transactions under the Home Owners' Loan Act is uniform in the recognition of the public policy ascribed to this statute in that case.

Section 1467, paragraph (a), of the Home Owners' Loan Act of 1933 (U. S. Code, tit. 12, § 1467, ¶ [a]) provided: " Whoever makes any statement, knowing it to be fa se, * * * for the purpose of influencing in any way the action of the Home Owners' Loan Corporation or the Board or an association upon any application, * * * or loan, under this chapter, * * * shall be punished by a fine of not more than $5,000, or by imprisonment for not more than two years, or both."

The discharge of plaintiff's mortgages as paid was a statement which in its natural effect necessarily must have influenced the Home Owners' Loan Corporation to a belief that there had been a satisfaction of defendants' liability to plaintiff arising out of and in connection with the surrendered note and collateral mortgages, except to the extent disclosed respecting the new $830 note secured by second mortgage. The failure to disclose to the " fee closing attorney " the other new note for $1,836.43 directly aided in the inducement of such belief. If it were not intended to induce the belief in the Home Owners' Loan Corporation that defendants' liability to plaintiff was being discharged, then the natural procedure would have been for plaintiff to execute an agreement to subordinate the lien of its security to the mortgage securing the loan sought from the Home Owners' Loan Corporation.

The rule was stated in *Richardson* v. *Crandall* (48 N. Y. 348, at p. 362): " In all cases where contracts are claimed to be void as

against public policy, it matters not that any particular contract is free from any taint of actual fraud, oppression or corruption. The laws look to the general tendency of such contracts. The vice is in the very nature of the contract, and it is condemned as belonging to a class which the law will not tolerate."

In the instant case it is clear that if the plaintiff were permitted to take a secret note for the balance of its debt, the note could be reduced to judgment, the property sold on execution and the purpose of the statute thwarted to the detriment of the public interest. Plaintiff was not compelled to discharge defendants' liability to it; however, it did do so in legal form and so conducted itself in the transaction by formal statement and otherwise, as to induce the belief that such had been done in fact, and in this way influenced the action of the Home Owners' Loan Corporation in making the loan.

The test is not what the plaintiff did in withholding action on the note for a proper period, but rather what the plaintiff and others could do if such a practice were to receive judicial approval. In principle, if this action is permissible under the statute, then the authorized holder of a second mortgage could secretly take back a note payable the next day and immediately enforce this obligation to the utter destruction of the purpose of the statute. A survey of the transaction as a whole leads to the conclusion that to give validity to the note sued upon would be to sanction a violation of the spirit of the statute and contravene public policy.

Defendants are entitled to judgment.

Judgment accordingly.