SIRMAN *v.* SLOSS REALTY COMPANY, INC.

4-5530                                      129 S. W. 2d 602

Opinion delivered June 12, 1939.

*Chas. W. Garner,* for appellant.

*Barber & Henry,* for appellee.

BAKER, J. A suit was filed in the chancery court on September 15, 1938, to recover judgment and to foreclose a lien of a second mortgage on lot 9, block 4, Chesterfield Square Addition to the city of Little Rock. The appellants offered several defenses to prevent a recovery and foreclosure of this second mortgage. They insist that the receipt of, a bond for the sum of $100 and a small cash payment delivered to the Sloss Realty Company by the HOLC and the execution by the Sloss Realty Company of a warranty deed to enable the Sirmans to give a first lien to the HOLC was a complete settlement of the original debt and that the second mortgage and the note it secured were without consideration. They argue that the second mortgage and note were unenforceable for the reason they were against public policy as fixed and determined by the HOLC act of 1933 and the rules and regulations of the HOLC board. They also allege that the mortgage and note were obtained by fraud, and that the note and mortgage are void because the mortgage was not acknowledged according to statutory requirements. They argue also there was error of the trial court in not requiring the appellee to give an itemized statement, or bill of particulars as to what items entered into the $900 note. The court decided all these

issues against the appellants and the appeal from the decree of the chancery court is to reverse that decree.

The view that we have of this situation as presented by this record is such that the three contentions made by the appellants are so inter-related and connected one with the other that they cannot well be stated as different subject-matters, nor may they be discussed as independent of the other and it may save time and space to state and present these several matters according to their connected relations with each other and in that way determine the merits of each and all of them as the facts may not be separated and all the matters be discussed separately without unnecessary repetition.

An effort will be made to present all these matters as above indicated and we shall attempt to make a statement of the facts without abstracting the evidence in detail. Sloss and his wife sold to the Sirmans the foregoing real property in 1925. Small payments were made from time to time upon the property until in 1931. The date of the original contract appears to be February 15, 1925, and on October 15, 1931, more than six years later, a new contract was entered into between the parties. By the agreement on that date, Sloss, the seller of the real estate, reserved the right to maintain on the real property a first mortgage not to exceed $1,500 and there were to be made certain payments by M. M. Sirman upon the property amounting to $27 per month and at the same time Sirman and his wife executed to Sloss a note in the sum of $2,944.19 as a balance then to be paid upon the $3,700 indebtedness upon the property. There was noted upon this note a credit of $400 as of date February 20, 1933, reducing the indebtedness by that sum to $2,431 as of that date. The note bears credits, the details of which are unnecessary to set forth. Thereafter, in February, 1934, Sirman made application to the HOLC to borrow money from this corporation to refinance this property he had bought from Sloss. He testifies that he did not know at that time the exact amount that he owed and that he made a statement in his application of the facts as he knew them and submitted this statement to Sloss who inserted in it figures or amounts

with which he was not familiar. The application, however, shows that there was upon this property a first mortgage securing a debt owing to Dora A. Bainbridge of $800, and to the Fidelity Company amounting to $450, and that there was due upon the second mortgage $1,144.51, including interest. It also showed there were taxes past due. A loan was finally granted in the sum of $1,500, after an appraisement showing the property was worth $2,066. The parties who held debts against this property, Dora A. Bainbridge and Fidelity Company, filed with the HOLC consent or agreements to accept HOLC bonds in settlement of the respective indebtednesses in the following sums: Dora A. Bainbridge, $800; Fidelity Company, $450, and the Sloss Realty Company, $323.99. These agreements, or "consents," as they were called, were filed, as we understand, prior to the date of the grant of the loan for $1,500. When the loan was finally fixed in that sum, it became necessary then to secure new "consents" or agreements from the creditors so that the amount of bonds that might be issued would be within the loan. Sloss, who represented the Sloss Realty Company, the owner of the Sirman paper, says that he knew that Bainbridge and the Fidelity Company would not scale down or reduce indebtedness that was owing to each of them, so it became necessary, if the loan went through, for him to reduce the amount that he was willing to accept in HOLC bonds. There was also a statement that taxes, special assessments, insurance, loan expense, etc., would have to be paid, which, upon final settlement, reduced the amount that would be paid to Sloss from $323 to $113.34, so in satisfaction of the lien that Sloss held against this property at this time, he accepted a bond for $100 and $13.34 in cash.

It is now insisted by the appellants that this was in satisfaction of the debt that was then due Sloss in the sum of $1,144.51 balance, which we think the record discloses was the obligation owing at that time by Sirman to Sloss in addition to the $1,500 represented by the mortgage to the HOLC. In the foregoing statements when we have referred to the appellee as Sloss we do so without distinguishing between Sloss and the Sloss Realty

Company, which took over the Sloss notes and papers after the settlement made October 15, 1931. This is a matter that is immaterial inasmuch as there is no controversy involving the period of time of ownership of this paper by Sloss as the individual or the corporation he represented. Many of the disputed questions of fact will be passed over without consideration, for the reason that they have been determined by the chancellor, and we think in that regard the chancellor's findings of fact were correct or at least not obviously contrary to a preponderance of the evidence.

Of these disputed questions of fact, one in regard to the amount that Sirman now claims to have paid upon this indebtedness should have been noticed. It is argued in his brief that though he does not know exactly what he paid, it was approximately $3,100 or $3,200. We find, however, from the excerpts of his own testimony that in 1931 when he executed the new note and accepted the new contract, he had not paid exceeding $1,000. There was an admitted indebtedness of $2,700. The proof is that for the next two years or up until the time of the execution of the HOLC mortgage his payments had not exceeded $75 or $80 per year. He admits in several instances that he does not know what he had paid. We, therefore, think that violence is not done to any of his rights in determining that the actual balance that he owed is clearly not in excess of what he is now willing to admit was at that time owing by him. In fact he was owing much more than the $900 note and mortgage that he then executed after he had executed the mortgage for $1,500 to the HOLC and after he had received credit for the $400 found in memorandum upon the margin of the $2,700 note.

It is argued that Sloss' agreement or consent to accept from the HOLC $323.99 should be conclusive and again when he did agree and accept the $113.34 that this was conclusive, and Sloss may not now be heard to say otherwise. We do not think so. When Sloss agreed to accept one bond and the small amount of cash, he noted by writing upon this consent or agreement the fact

that he expected to take from Sirman a second mortgage. The language used by him in this respect is harshly criticised, for he said, "except for a small second mortgage." In addition, it is urged that this reservation or notation that he expected to receive a second mortgage and the second mortgage are in violation of the public policy of the government as indicated by the Act of Congress under which the HOLC was organized, and that, inasmuch as the amount was not stated, it was an intentional deception of the HOLC, for the reason that the second mortgage, instead of being a small one, was a relatively large one. Whether that theory be true or false it was notice to the HOLC that Sirman and his wife would execute this second mortgage that would be received and taken by Sloss upon the same property that Sirman had mortgaged to the HOLC. Sirman and his wife denied they had executed this note and mortgage for $900. Upon inspection, however, of their signatures they admitted these to be genuine, but denied they acknowledged the mortgage and testified that when these instruments were signed they executed them or signed them without reading because Mr. Sloss represented to them that they were papers in connection with the HOLC loan for which they had applied. Sloss said all these matters were explained and understood and that numerous letters were written to Sirman immediately after the execution of this second mortgage demanding payment in accordance with its terms and that Sirman ignored these letters until suit was threatened and denied liability at all times, after his attention was called to the fact that he would be sued. The record in this case does not disclose as a fact that Mr. and Mrs. Sirman are ignorant of business affairs and ways and that they were the easy victims of deception, but we were rather impressed with the idea that Sirman and his wife understood the various transactions and that they intentionally executed this second mortgage and seek now to avoid the effect of their voluntary acts.

We believe the trial court was correct in failing and refusing to find that Sirman had paid $3,100 or $3,200 upon this indebtedness. We believe and support the find-

ing of the chancellor that this $900 note and mortgage securing it were less than the amount that was owing by Sirman to Sloss at the time the $900 note and mortgage were executed. This was an actual debt for the purchase money upon the above described real property. It is urged now that because Sloss executed a warranty deed conveying this property that this second mortgage is without consideration; that the two are in contradiction one with the other. This conclusion does not follow. It is a common practice to convey property by a deed reserving a lien for the unpaid portion of the purchase money, which in effect is a mortgage back for that amount, or property may be conveyed for a consideration and a mortgage be given for the full amount of the consideration and the two instruments will be read together as constituting the contract between the parties. The release executed by Sloss to the HOLC was not in contradiction of the mortgage back, nor was it in fraud of the HOLC and it may be said in relation to this fact that the HOLC is not making any complaint in that respect. It had notice that this second mortgage would be executed by Sirman in the language of Sloss, "except for a small second mortgage back." If there was fraud in the execution of this mortgage Sirman participated in it when he executed the mortgage. There is no evidence of fraud. In truth it appears that the parties were working together, understood each other, and that there was no deception unless Sirman was intending to deceive Sloss in the execution of this second mortgage and later intended to assert its invalidity. We do not even believe that was in his mind at that time.

In regard to the forceful assertion that Sloss' conduct was fraudulent and that on account thereof the note and mortgage executed by Sirman and his wife were void, there is need of very little comment. No substantial proof sustains this allegation and we only desire to add that violent denunciation will not supply lacking proof, nor will verbal castigation establish as a fact a matter that may be proven only by the production of evidence, wholly lacking here. Accord and satisfaction arise out of contract and the evidence presented upon this prop-

osition proves the parties did not so agree. But it is argued that this note and second mortgage are void on account of public policy; that the act of Congress for formation of HOLC did not contemplate the execution of second mortgages and that if not expressly forbidden by the act itself they were prohibited by the directions to applicants, or by the rules the corporation was empowered to make. Therefore, public policy as announced by many of the courts protects the appellants here from the enforcement of the note and second mortgage. We have tried to give due consideration to this theory of appellants' case. Public policy is a vague phantasmagoria of legal concepts, when an effort is made to give the term meaning aside from the consideration of Constitution and statutes. Ordinarily, public policy of the United States Government is shaped and defined by the Constitution and Acts of Congress. If we offer such a test in the present case we may eliminate the Constitution at once as it is not contended by the appellants that there is any constitutional question involved, but it is insisted by them that the Acts of Congress under which the HOLC was organized and operates determine the public policy of the National Government as it has been declared by decisions found in the Reporter systems, particularly cited are the following cases. *Cook* v. *Donner*, 145 Kan. 674, 66 Pac. 2d 587, 110 A. L. R. 244; *Stager* v. *Junker*, 188 A. 440, 14 N. J. Misc. 913; *Home Owners Loan Corporation* v. *Wilks*, 130 Fla. 492, 178 S. 161; *Pye* v. *Grunert*, 201 Minn. 191, 275 N. W. 615, 176 N. W. 221; *Jessewich* v. *Abbene*, 154 Misc. 768, 277 N. Y. S. 599; *First Citizens Bank* v. *Speaker*, 159 Misc. 427, 287 N. Y. S. 831; *Cheves County Building & Loan Ass'n* v. *Hodges*, 40 N. M. 326, 59 Pac. 2d 671.

Without going into and giving an analysis of the foregoing several cases we call attention to the fact that no one of the several decisions eminated from any United States court. Notwithstanding that fact, however, we give due regard thereto, having considered them for the purpose for which they were offered. While such decisions are persuasive they are by no means conclusive and we are not bound by the announcements in them unless

we find them in accord with the decisions of the United States Supreme Court or with our own conclusions. We accord to the United States Supreme Court not only the right, but the power and authority, to announce the public policy of the United States and until that court shall have made its own interpretation and conclusions, we are free to present what we believe to be the sound declarations upon such mooted questions as public policy. A fragmentary view of any of the activities of the United States government, without a consideration of its many agencies, organized for rehabilitation and relief, would most likely prove extremely deceptive. The very name of the HOLC when we realize that it was a creature formed by an Act of Congress, might tend to unculcate an erroneous idea of its purposes and activities. We emphasize the point that it is difficult to determine the public policy of the United States Government from any single activity for it may be said that the federal government is active in almost every sphere, looking to recovery from the effects of depression. It is furnishing money to relieve distress whether it be among the lending or the borrowing classes. It is not attempting to refinance and rehabilitate the debtor class only. For instance, through RFC there has been an attempt to refinance and rehabilitate loan organizations, building and loan associations being a special object of this national agency. But there has been no effort to favor the debtor group as distinguished from the creditor group. Surely, there seems to be no recognition of such differences of class distinctions, so it must appear, we think, that the idea that home owners are among those to be helped and provided for as distinguished from others who were just as needy, is without merit and not justified. It may be said without any reasonable contradiction that the purposes of the organization of the HOLC was not to support and uphold the home owners at the expense and detriment of creditors. We have already called attention to the fact that building and loan associations and other small creditor corporations were as much the objects of solicitude of the lending agencies of the federal government as were the home owners. The truth is, the HOLC is, as its name

implies, a corporation, one that may sue or be sued. It is controlled by a board of directors; it is engaged in private business, and while it has power to make rules and regulations for the conduct of its business, it cannot legislate. It may operate in the sphere for which it was created without any implication of the sinister purposes of furnishing aid to one class so that proportionally that class may profit, and prosper; and to the same extent destroy another class of citizens equally entitled to governmental protection. The idea of the HOLC was to refinance the home owner, amortize his debts and obligations so that he could not only continue to possess his home, but also to retain and maintain his integrity, and to rebuild his financial independence, and no part of these acts was intended to furnish a means for coercion or oppression of the home owner's creditors. The processes of its operation show that the home owner and his creditors had to agree or contract with reference to these refinancing operations. The right to agree and contract in regard thereto was fully recognized and this case is illustrative of the processes whereby Sirman and his wife were refinancing their home by agreement with Sloss about the debts they owed him. The implication is unfair that insists that the National Government and its agencies were seeking to aid or rehabilitate a Sirman at the expense of destruction of a Sloss.

Without attempting further analysis of the cases above cited, we call attention to the narrow basis of some of the decisions. One at least is founded on the fact that the directions to applicants indicated a public policy and that anything contrary thereto or in violation thereof was illegal. Several of the other decisions are grounded exclusively upon the proposition that since the HOLC board had power to make rules, that any violation of these rules was contrary to public policy. The narrow ledge upon which such a decision stands is that a rule of the board may not be violated. These rules were announced for the protection of the corporation and since Congress has not attempted to control or circumscribe the freedom to contract, it may be stated as a matter of extreme doubt that that board might do so. Of the two rules cited for

our consideration one permitted second mortgages, and the other limiting the amount of such second mortgages was not adopted until nearly six months afer Sirman executed the one in question here.

The appellee has cited and set forth in full a case of *McAllister, et al., v. Drapeau, et al.,* 85 Pac. 2d 523. This decision comes from the district court of appeals, second district, division 1, California, and is a decision rendered December 15, 1938. This is not a court of last resort and we do not rely upon it as such, but because of the clear thinking and fine reasoning of that court we are pleased to call attention to it, although its decision has not yet become final. That is to say, we are advised that the opinion has been certified up or appealed to the highest appellate court of the state of California for final consideration.

Those who are interested in the questions involved will find much information and evidence of research by reading the cited case. It also abounds in a criticism of the authorities cited by appellants. It seems to us that most of these criticisms are not unfair. We borrow from that case a quotation taken by it from other authorities: "The power of the courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." *Stephens* v. *Southern Pac. Co.,* 109 Calif. 86, 41 P. 783, 29 L. R. A. 751, 50 Amer. St. Rep. 17.

Other citations and authorities to the same effect would only tend to increase unnecessarily the length of this discussion without adding to its utility.

So we hold that the warranty deed and the release when considered in the light of, and under the authorities, announced in regard to the HOLC do not constitute a valid defense as pleaded and urged by the appellants. Nor was the release of them so that the HOLC might take and hold a first mortgage lien against the property a satisfaction of the indebtedness so that the continuing moral obligation on the part of Sirman to pay the pur-

chase price for the property did not constitute a valid consideration for the new note and second mortgage. We have already stated our conclusions to the effect that the facts fail to support the charge of a fraudulent procurement of the execution of the note and mortgage.

The next contention is that the note and mortgage are void because they are not acknowledged according to statutory form. The rule is stated in that regard in the case of *Wooten* v. *Farmers & Merchants Bank*, 158 Ark. 179, 249 S. W. 569. It is true these appellants deny they acknowledged this mortgage, but they also denied they executed or signed it. They now admit their error in the matter of the signatures, but still insist that they did not in fact acknowledge it and this is particularly true as to Mrs. Sirman. While this is a disputed fact sharply contested we certainly do not feel that we are justified in overturning the chancellor's decision in that regard. If there was an acknowledgment the certificate of the acknowledgment is conclusive of the manner in which it was taken. It was so held in the last cited case. Pope's Digest, § 7181, does make it necessary that the wife sign and acknowledge an instrument such as the second mortgage in this case for a part of the purchase money.

It is finally urged and argued, most seriously, by appellants that the trial court erred in refusing to grant the prayer of the appellants wherein they asked by motion that the appellee be required to set forth a bill of particulars or statement of account showing the manner of arriving at the indebtedness of $900, as evidenced by the note. We think the court was not in error in disposing of this matter in a rather summary manner. The note and mortgage imported liability evidenced by these instruments executed by defendants. If there were mistake or fraud the burden was upon appellants to show the fact, but upon this development of the whole case there appears not to have been either mistake or fraud.

We think the trial court did not err in denying the appellants' motion in that regard. Whatever else might

be said about this case would tend only to prolong it without adding any beneficial effect.

The decree of the chancery court is, therefore, affirmed.