WILLIAM J. LAVERY *v.* GIOVANNI RIZZA ET AL.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued October 3—decided December 6, 1939.

*James C. Shannon,* for the appellants (defendants).

*Milton L. Cohn,* with whom was *Israel J. Cohn,* for the appellee (plaintiff).

*Gordon MacIntosh,* of the District of Columbia Bar, amicus curiae.

JENNINGS, J.   The plaintiff sought foreclosure of a second mortgage on property of the defendants. The plaintiff's assignor had signed a "consent to take bonds" for the Home Owners' Loan Corporation, hereinafter called the HOLC, and the defendants claim that the second mortgage was without consideration, against public policy and void.

The finding, which cannot be corrected in any respect material to this controversy, discloses the following facts: On August 16, 1934, the defendants were the owners of property in Bridgeport incumbered by two mortgages, on the second of which the owner, Antonio Mannino, had begun foreclosure.   As a result of previous negotiations, the defendants, on that day, gave a new first mortgage to the HOLC for $4480 and a second mortgage to Mannino for $1120.   The amount of the latter represented the difference between the amount of the HOLC mortgage and its appraisal and was a part of the debt owed Mannino by the defendants before the refinancing.   At the same time Mannino signed a "consent to take bonds" for the purpose of completing the closing file of the HOLC and its title search attorney.   This recited among other things the amount of his debt, his willingness to take a lesser amount in bonds of the HOLC and

"thereupon to release all the claim of the undersigned against said property." The mortgage and note to the HOLC were prepared by the Kelsey Company acting for it and in its behalf and the mortgage and note to Mannino were also prepared in the office of the Kelsey Company. At the time the mortgage to the HOLC was executed, that to Mannino was delivered to him. The entire transaction was completed in the course of one day. The mortgage for $1120 was assigned to Pavone and was by him assigned to the plaintiff as security for a loan of $1000 which he made to Mannino. The plaintiff took the assignment in good faith and is the actual and bona fide holder of the note and mortgage. It is assumed, without deciding the point, that he had no greater rights than Mannino.

Among the regulations adopted by the HOLC was the following: "Second Mortgages—Where the full amount of the indebtedness against the property cannot be refunded by the Corporation, the mortgagee or other lien holder will be permitted to take a second mortgage or second deed of trust if the amount of such second mortgage or deed of trust does not exceed the difference between the Corporation's appraisal and the amount of the Corporation's first mortgage. In no case shall the second trust or second mortgage to such other mortgagee or lien holder be in terms which would cause the mortgagor's payments to the Corporation to be a hardship, or deprive the mortgagor of reasonable opportunity to pay such second mortgage or second trust." There was no finding that the mortgagor was deprived of reasonable opportunity to pay the mortgage in suit.

On these facts the court found that "Nothing in the evidence shows the mortgage described in the first count of the complaint to be without consideration,

illegal, or in conflict with any regulation of the Home Owners' Loan Corporation."

The defendants' brief states the real issue to be whether the mortgage in suit was in contravention of public policy and therefore illegal and void. 12 U. S. C. A., § 1461 et seq. Many cases are cited where this conclusion was reached. Most of them can be distinguished from the present case on their facts or the legal issues involved. For instance in *Meek* v. *Wilson,* 283 Mich. 679, 278 N. W. 731, the existence of the agreement for the second mortgage was not known to the HOLC or its representative and the aggregate amount of the first and second mortgages exceeded the appraisal. In *Cook* v. *Donner,* 145 Kan. 674, 66 Pac. (2d) 587, 110 A. L. R. 244, the agreement was also secret and it does not appear that the second mortgage came within the exceptions contained in the regulations. *Pye* v. *Grunert,* 201 Minn. 191, 275 N.W. 615, and *Stager* v. *Junker,* 14 N. J. Misc. 913, 188 Atl. 440, involved an entirely different provision of the HOLC act. As far as the Federal Land Bank cases are concerned, it suffices to point out that the "creditors agreement" signed in those cases contained provisions that (1) no separate agreement had been made to cover any balance of indebtedness (2) that the debt was extinguished and (3) that the creditor would neither attempt to collect nor even receive anything thereon. *Federal Land Bank* v. *Koslofsky,* 67 N. D. 322, 327, 271 N. W. 907, 909. This is a very different document than the "consent" signed in this case. For a careful analysis of the decided cases see the two opinions in *McAllister* v. *Drapeau* (Cal. App.) 85 Pac. (2d) 523, reversed (Cal.) 92 Pac. (2d) 911.

Under the regulations it is provided that a second mortgage should not be permitted where the effect will be to cause the mortgage payments to be a hard-

ship or to deprive the mortgagor of a reasonable opportunity to pay the second mortgage. It may be that if the representatives of the HOLC, in accepting a first mortgage, have no knowledge that it was proposed to give a second mortgage, that mortgage would be void as against the policy of the act. That, as we understand the case, was the ruling in *Council* v. *Cohen* (Mass.) 21 N. E. (2d) 968. In *Dayton Mortgage & Investment Co.* v. *Theis* (Ohio App.) 28 Ohio Law Abstract, 577, 581, it is said: "The administrators of the HOLC not only made the appraisal of the property but also in practice made an investigation of the resources and obligations of the owner so as to ascertain whether or not he could in all probability over a period of years reclaim and hold his home. This is the underlying reason why the courts have held that secret arrangements under which the home owner will obligate himself to pay the difference between the amount due to the original lien holder and the amount of bonds issued by the HOLC were void and against public policy." In that case it was held that where full disclosures are made and in the absence of fraud, secrecy, duress or collusion, the home owner may contract with the original lien holder to take care of the difference between the amount due and the face of the HOLC bonds, provided the total does not exceed the HOLC appraisal. If the representatives of the HOLC know that it is proposed to give a second mortgage and with that knowledge are willing to accept the first mortgage, we see no reason why the second mortgage should be invalid as against public policy.

In *Ridge Investment Corp.* v. *Nicolosi*, 15 N. J. Misc. 569, 193 Atl. 710, as here, the total amount of the first and second mortgages did not exceed the HOLC appraisal and the second mortgage was drawn by the closing attorney for the corporation. The court

said (p. 570): "We are unable to agree with the contention of the appellants that agreements for payments over and above the amount of the Home Owners' Loan Corporation mortgage are entirely void and illegal. The most favorable view of the statute and the cases thereunder cited would be that fraudulent agreements, made in collusion to induce the granting of the mortgage loan by the corporation, are unenforceable. As stated, the factual finding here is that there was no fraud or collusion, and that the arrangement was openly made with the knowledge of all parties, including the representative of the corporation."

The distinction between a second mortgage executed with the knowledge and consent of the attorney closing the transaction for the HOLC and a second secret note is pointed out in *First Citizens Bank & Trust Co.* v. *Speaker,* 287 N. Y. S. 831, 159 Misc. 427, affirmed 294 N. Y. S. 737, 250 App. Div. 824. See also *Bay City Bank* v. *White,* 283 Mich. 267, 277 N. W. 888; *Sirman* v. *Sloss Realty Co., Inc.* (Ark.) 129 S. W. (2d) 602.

In the case before us both the HOLC mortgage and the Mannino mortgage were prepared in the office of a company which, as regards the former, was acting for the HOLC, and the entire transaction was completed on the same day. While the finding is not explicit as to the authority of the Kelsey Company, as the agent of the HOLC, the evidence brought before us by the defendants in the effort to correct this part of the finding is that the Kelsey Company made the arrangements and closed the deal. The knowledge it had of the mortgage to Mannino must have come to it in the very course of the performance of its agency for the HOLC in securing the mortgage it took. Under such circumstances that knowledge is to be imputed to the HOLC. *MacKay* v. *Aetna Life Ins. Co.,* 118

Conn. 538, 549, 173 Atl. 783; Restatement, 1 Agency, § 274. The case is, then, one where it must be held that the HOLC took the first mortgage with knowledge that the second mortgage was to be given to Mannino. Under such circumstances the latter mortgage was not invalid as against public policy. The mere fact of the giving of the second mortgage cannot in itself be regarded as a violation of public policy when it is authorized by the very regulations which the HOLC has itself adopted in pursuance of the act.

There is no error.

In this opinion the other judges concurred.