[Civil No. 4355.   Filed June 23, 1941.]

[114 Pac. (2d) 900.]

TOM P. NEAVITT, ELIZABETH NEAVITT, NELLE NEAVITT ALLEN, NORA NEAVITT McKINNEY and JULIA NEAVITT BOYD, Heirs of BETTIE NEAVITT, in Their Sole and Separate Right, Appellants, v. FRANK M. UPP, Appellee.

Messrs. Houston & Dodd, for Appellants.

Mr. Richard H. Chambers, for Appellee.

Mr. James M. McGrath, of San Francisco, California, Special Attorney for Home Owners' Loan Corporation, *Amicus Curiae.*

LOCKWOOD, C. J.—Frank M. Upp, plaintiff, brought this action asking for a declaratory judgment that a certain note and mortgage made by him on January 18, 1934, to Tom P. Neavitt, Elizabeth Neavitt, Nelle Neavitt Allen, Nora Neavitt McKinney and Julia Neavitt Boyd, heirs of Bettie Neavitt, in their sole and separate right, defendants, be declared null and void.

A cross-complaint was filed, asking judgment on the note and that the mortgage be foreclosed and the property sold to satisfy the judgment. This note and mortgage admittedly were executed under the following circumstances: Prior to the date thereof defendants owned certain property in the city of Tucson, which was subject to a mortgage. They were selling this property to plaintiff under a contract, and both the payments of plaintiff to defendants thereunder and those due on the mortgage were greatly in default. Plaintiff endeavored to refinance the property through the Home Owners' Loan Corporation, hereinafter referred to as the HOLC. The matter was thoroughly discussed with W. R. Wayland, state manager of the HOLC, and J. J. O'Dowd, who was its local represen-

tative, and finally plaintiff wrote to defendant Tom Neavitt, who apparently was handling the transaction for his co-defendants, as follows:

"Tucson, Arizona
"Dec. 28, 1933

"Tom Neavitt:—

"At last I have heard from the Home Owners Loan Corporation. However it was very disappointing. It is as follows:

" 'We have had an inspection as well as an appraisal made of your property and find that your principal indebtedness will have to be reduced approximately $400 in order for this corporation to refinance your home. If this can be accomplished and you will have the holder of your mortgage so advise us in writing we will endeavor to close your loan without delay.

" 'Yours truly,
" 'W. R. WAYLAND, State Mgr.'

"I took the matter up with O'Dowd, the local representative here and he put the matter up to me in this way. That you and I are in the same boat. That if the first mortgagor should foreclose each of us would loose our interest and his suggestion was that you accept $100 in bonds and that I execute a 2nd mortgage for the balance to run for 3 years in that way we both could save our interests. So I am sending you a Mortgagee's consent to take bond and have made it out for $100 an— trust it will meet with you— approval and sign same. This way you will get $100 bond and a 2nd Mortgage for the balance to run 3 years. When in town come and see me and we will go and see O'Dowd together.

"Trust you will in the meantime hurry this along as fast as possible. Thanking you I am

"Respectfully,
"(Signed) FRANK M. UPP."

In response to this letter, Tom Neavitt, plaintiff and O'Dowd met at the latter's office, and after each of the defendants had executed a document which read, except as to differing amounts, in part as follows:

"Mortgagee's Consent to take Bonds.

"To Home Owners' Loan Corporation:

"The undersigned is a holder of a first mortgage or other obligation, which constitutes a lien or claim on the title to the home property of Frank M. Upp located at 710 S. 2nd Ave., Tucson, Ariz. in the
(Number) (Street) (City) (State)
sum of $50.00 including unpaid balance of principal and interest, to date.

"Being informed that said owner has made application to Home Owners' Loan Corporation to refund his said indebtedness, the undersigned has considered the method of refunding mortgages provided in Home Owners' Loan Act of 1933, as amended and passed by Congress and approved by the President, and the undersigned hereby consents, if said refunding can be consummated, to accept in full settlement of the claim of the undersigned the sum of $50.00, face value of the bonds of Home Owners' Loan Corporation, to be adjusted with not exceeding $25 cash and thereupon to release all the claim of the undersigned against said property.

"...."

the plaintiff executed the note and mortgage and delivered them to Tom Neavitt. This mortgage, however, was not recorded until after the loan from the HOLC was put through. Thereafter plaintiff paid $70 on the note and then defaulted.

Upon the foregoing facts the court held the note and mortgage null and void as contrary to public policy, whereupon this appeal was taken.

The situation out of which the HOLC arose and the purpose of this organization are so well known as to require but a brief summarization. As a result of the great depression which started in the early thirties, many mortgagors found the burden of paying off the mortgages on their property was greater than they could bear. The federal government, therefore, organized the HOLC for the purpose of assisting dis-

tressed mortgagors. Briefly speaking, the act establishing it provided that the HOLC would, under certain circumstances, refinance mortgagors who were in distress by settling their indebtedness and taking as security a new mortgage on the property. Since one of the great causes of the distress was that the property mortgaged was not worth the full amount of the debt, the HOLC reappraised the property at its true value and required by its regulations that the loan made by it should not exceed 80% of such valuation, and that the existing debt be scaled down to that figure by the creditor, except under certain special circumstances to be approved by it, in which latter case a second mortgage on the premises in favor of the creditor was permitted. Since in a great majority of cases the creditor was required to accept a reduction of his existing debt in order that the HOLC would refinance the transactions, many efforts were made by such creditors to prevent the loss, the attempt generally taking the form of a new note and second mortgage given by the original mortgagor to the creditor. These second mortgages and notes have come before the courts in many different jurisdictions, and there is general agreement in the decisions on the law applicable thereto. It is held that if the HOLC has notice of the contemplated second mortgage and note, and, knowing this fact, makes its loan, the second note and mortgage are valid. On the other hand, if it has no notice, actual or implied, that there is to be such a transaction, and the parties have agreed to cancel the balance of the original debt, the second mortgage and note are void as against public policy. *Anderson* v. *Horst*, 132 Pa. Super. 140, 200 Atl. 721; *Johnson* v. *Matthews*, 301 Ill. App. 295, 22 N. E. (2d) 772; *Chaves County B. & L. Ass'n* v. *Hodges*, 40 N. M. 326, 59 Pac. (2d) 671; *Meek* v. *Wilson*, 283 Mich. 679, 278 N. W.

731; *Ganchoff* v. *Bullock,* 234 Wis. 613, 291 N. W. 837; *Lavery* v. *Rizza,* 126 Conn. 132, 9 Atl. (2d) 819; *Jessewich* v. *Abbene,* 154 Misc. 768, 277 N. Y. Supp. 599; *First Citizens B. & T. Co.* v. *Speaker,* 250 App. Div. 824, 294 N. Y. Supp. 737. The only jurisdiction so far as we are aware where this rule has been questioned is Arkansas. *Sirman* v. *Sloss Realty Co.,* 198 Ark. 534, 129 S. W. (2d) 602, and *McMillan* v. *Palmer,* 198 Ark. 805, 131 S. W. (2d) 943.

The question then arises as to whether the HOLC did have notice of the proposed second mortgage at the time it completed its loan. Defendants base their contention that it did on the admitted fact that O'Dowd not only had full knowledge of the intended second mortgage and note and all of the facts in regard thereto, but actively participated in their execution. The case then turns upon the question as to whether notice to O'Dowd was notice to the HOLC. Just what relation did O'Dowd have to it? He is referred to variously as the local representative or the closing attorney, but there is no evidence in the record as to how far his general authority went. Apparently he was the same class of agent as those mentioned in the case of *Ganchoff* v. *Bullock, supra; Lavery* v. *Rizza, supra; Markowitz* v. *Berg,* 125 N. J. Eq. 56, 4 Atl. (2d) 410; Id., 127 N. J. Eq. 90, 11 Atl. (2d) 107. In the first two cases it was held that notice to the agent was notice to the HOLC. In the third it was not. The general rule of law is that notice to an agent acting within the scope of his authority is notice to the principal, but if he acts outside of that scope it is not, unless the circumstances are such that the party relying on the notice had reasonable ground to believe that the agent was acting within it. *Southern Casualty Co.* v. *Hughes,* 33 Ariz. 206, 263 Pac. 584; Restatement of Agency, par. 280.

■■ In the present case the facts show that the agent, plaintiff and defendants all knew that the agent was acting without authority, for they were all well aware of the contents of the letter from Wayland, the state manager, to plaintiff. Knowing that the HOLC had insisted on having the indebtedness scaled down, they made an attempt to violate the only conditions upon which it was willing to make the loan. The trial court, therefore, correctly held that the second mortgage and note were against public policy and void. It is suggested there was no accord and satisfaction of the debt. We think the circumstances clearly establish that there was. Restatement of Contracts, par. 421.

The judgment of the lower court is affirmed.

McALISTER and ROSS, JJ., concur.