As administrator of the estate of William r. Conklin, the plaintiff seeks foreclosure of a second mortgage on Stamford property of the defendant. To the complaint, the defendant has addressed four special defenses and a counter-claim asking that the mortgage be declared null and void and that the plaintiff be required to effect its release and deliver up the outstanding mortgage note.
On February 6, 1928, Mr. Zagrodny, as owner of a Stamford dwelling, executed a second mortgage thereon, in the principal sum of $1,000, to the late Mr. Conklin. This encumbrance, payable three years from its date, was subsequent to a first mortgage of the Stamford Trust Company. Thereafter Mr. Zagrodny paid his second mortgage interest with reasonable promptness, failing, however, at its due date, to liquidate the principal of the obligation.
With the arrival of the spring and summer of 1934, Mr. Zagrodny found himself in serious financial difficulty since his first mortgage was then in default, the first mortgagee was threatening foreclosure, and his second mortgage to Mr. Conklin was long overdue. In common with distressed home owners throughout the country, he filed an application for relief with Home Owners' Loan Corporation, and a subsequent appraisal of that agency fixed the value of his property at *Page 435 
$4,250. In accordance with its rule, permitting mortgage loans in an amount not to exceed eighty per cent of the appraised value, Home Owners' Loan Corporation agreed to refinance the outstanding encumbrances by loaning Mr. Zagrodny $3,400.
On November 5, 1934, Mr. Zagrodny executed to Home Owners' Loan Corporation a mortgage note and deed in that sum — $3,100 of which was paid to the Stamford Trust Company to satisfy its first mortgage debt with accrued interest; and the remaining $300 of which was paid to Mr. Conklin in accordance with a Home Owners' Loan Corporation "consent to take bonds", a document wherein was recited the amount of his debt ($1,000); his willingness to take a lesser amount in H. O. L. C. bonds ($300); and "thereupon to release all the claim of the undersigned against said property."
To complete the refinancing details, all parties in interest met, on November 5, 1934, at the Stamford office of Attorney Aaron Weissman, who was serving as closing attorney for Home Owners' Loan Corporation. Upon receipt of his $300 in H. O. L. C. bonds, Mr. Conklin surrendered to Mr. Zagrodny the outstanding second mortgage note and deed, at the same time executing a release of the encumbrance.
Some time later on the same day, Mr. Zagrodny, at the office of Attorney Maurice Buckley, counsel for Mr. Conklin, executed a new second mortgage note and deed to Mr. Conklin, which obligation was in the principal sum of $775. Obviously this transaction was designed to provide Mr. Conklin with security not only for the $700 loss which he had sustained through acceptance of H. O. L. C. bonds but also for unpaid interest which had accrued on the original second mortgage. It is this new mortgage of November 5, 1934, which Mr. Conklin's administrator now seeks to foreclose. No part of its principal has been paid, nor has interest been paid since November 5, 1938.
It is now said by Mr. Zagrodny that the second mortgage sought to be foreclosed was and is without consideration in view of the execution of a "consent to take bonds", wherein Mr. Conklin, as second mortgagee, agreed to accept $300 in full satisfaction of his then outstanding mortgage. Further, it is contended that acceptance of the controversial mortgage constituted an act violative of public policy. In addition it is claimed that the mortgage in suit was taken without the *Page 436 
approval or consent of Home Owners' Loan Corporation; hence void. And finally it is said the terms of the second mortgage were and are such as to deny to Mr. Zagrodny reasonable opportunity to effect its liquidation.
The issues are somewhat analagous to those considered inLavery vs. Rizza, 126 Conn. 132. However, a fundamental distinction arises from the fact that the second mortgage in suit, unlike the mortgage in Lavery vs. Rizza, supra, was executed without the knowledge, consent, or approval of Home Owners' Loan Corporation. As a matter of fact, H. O. L. C. was unaware of the independent transaction until sometime late in 1944, approximately ten years after its completion, when the chief attorney for that lending agency inquired of Mr. Weissman as to details of the original closing. In part, his letter of inquiry reads:
"It appears from our file that a disbursement of bonds and cash totalling $300.00 was made to William R. Conklin to refund a mortgage debt amounting to approximately $1,045.00.
"There is nothing in our records reflecting that Home Owners' Loan Corporation approved the acceptance by Mr. Conklin of a deficiency second mortgage to cover the difference between the amount of the debt and the amount available to him from the proceeds of the loan.
"However, I recently ascertained that Mr. Conklin took such a second mortgage in the amount of $775.00 and I am desirous of ascertaining whether your file contains any information with respect thereto. In particular, I would like to know whether there is any correspondence in your file indicating that this corporation approved of the acceptance of a new second mortgage by Mr. Conklin and also whether the same was taken with your knowledge and consent."
Attorney Weissman's reply, indicating as it does that the second mortgage transaction was secretive, says in part:
"I have examined my file and I find nothing in it to indicate that Mr. Conklin was to receive a second mortgage from Mr. Zagrodny.
"I have examined the land records and find that the H.O.L.C. mortgage was recorded on November 5, 1934, at 4:13 o'clock P. M. The mortgage from Joseph Zagrodny to William Conklin was also recorded on November 5, 1934, but at 5 *Page 437 
o'clock P. M. My name does not appear as a witness on the Conklin mortgage. It would, therefore, definitely appear that the Conklin mortgage was executed and recorded as an entirely different transaction from the H. O. L. C. mortgage closing.
"I have no recollection about the matter but from the file and the records, I believe I am safe in stating that the second mortgage was taken without my consent."
Thus it becomes apparent that Mr. Zagrodny, an untutored, unlettered factory worker, was caused to execute a secretive second mortgage to Mr. Conklin while the circumstances and terms of the transaction were withheld from H. O. L. C. Further it is to be noted that Mr. Zagrodny acted in the matter without benefit of independent legal advice, since the second mortgage note and deed were obviously prepared and executed at the office of Mr. Conklin's personal counsel and his present administrator.
An agreement between a mortgagee, such as Mr. Conklin, and a home owner, such as Mr. Zagrodny, made without approval or knowledge or consent of officials of H. O. L. C., by which the home owner assumes or agrees to pay all or any part of the mortgage debt which has been settled and released by the refunding of H. O. L. C., is void as against public policy and will not be allowed to be enforced by the mortgagee. This construction of the Home Owners' Loan Corporation Act is in accord with the great majority of the cases where the question has arisen. See Markowitz vs. Berg, 125 N.J. Eq. 56,4 A.2d 410; Lyon vs. Adams, 250 App. Div. (N. Y.) 737,294 N.Y.S. 732; Pye vs. Grunert, 201 Minn. 191,275 N.W. 615; McAllister vs. Drapeau, 14 Cal.2d 102, 92 P.2d 911;Sirman vs. Sloss Realty Co., Inc., 198 Ark. 534, 129 S.W.2d 602;Council vs. Cohen, 303 Mass. 348, 21 N.E.2d 967; Note, 52 Harv. L. Rev., 342; Anderson vs. Borst, 132 Pa. Super. 140,200 A. 721; Jessewich vs. Abbene,154 Misc. (N.Y.) 768, 277 N.Y.S. 599; First Citizens Bank Trust Co. ofUtica vs. Speaker, 159 Misc. (N. Y.) 427, 287 N.Y.S. 831;Cook vs. Donner, 145 Kan. 674, 66 P.2d 587; Stager vs.Junker, 14 N.J. Misc. 913, 188 A. 440; Meek vs. Wilson,283 Mich. 679, 278 N.W. 731; Chaves County Bldg. LoanAssn vs. Hodges, 40 N.M. 326, 59 P.2d 671.
The reasoning of these cases proceeds on the theory that Home Owners' Loan Corporation, as a matter of policy, refuses *Page 438 
to refund encumbrances, where the creditor demands a deficiency second mortgage, unless it appears that the financial arrangements and the financial ability of the debtor are such that he will have a reasonable opportunity to liquidate both the first mortgage of the H. O. L. C. and the deficiency second mortgage. Therefore, say the majority courts, "it is essential .... in order that the corporation [H. O. L. C.] may ascertain the facts in a given case, that a full disclosure be made to it of the amount and terms of a proposed second lien, and whether it is reasonably probable that the home owner will be able to fulfill his obligations." Shiver vs. Liberty Building-Loan Assn.,16 Cal.2d 296, 300, 106 P.2d 4, 6.
In the instant matter Mr. Zabrodny's mortgage to H. O. L. C. contemplated monthly payments of $26.88 each, such payments to be applied first to interest on the unpaid balance and the remainder to principal until the total debt of $3,400 shall have been paid in full. Some short time after the mortgage had been made, Mr. Zagrodny defaulted in his monthly payments and it became necessary for H. O. L. C. to relax the mortgage terms with a view to giving him further relief. Had Mr. Zagrodny been able to pay $26.88 a month, through the ten-year period which has intervened since the making of the mortgage, his total payments would have approximated $3,100, a very substantial part of which would have represented liquidation of the mortgage principal. However, because of the relaxed and amended schedule of payments, under which he has been and is reducing the obligation, he continues to owe H. O. L. C. approximately $2,500 of the original debt of $3,400. Manifestly, then, throughout the entire ten years Mr. Zagrodny has been struggling to retain his property, and, were it not for the indulgence of a government lending agency, the consequences might well have been disastrous.
As further evidence of Mr. Zagrodny's straightened financial circumstances over the ten-year period which has elapsed since the execution of the H. O. L. C. mortgage and Mr. Conklin's second mortgage, it should be observed that no interest on the Conklin obligation has been paid since November, 1938.
The letter and spirit of the Home Owners' Loan Corporation Act and its supplemental regulations have always contemplated that under some circumstances it would be to the interest of the home owner to give a second mortgage to the creditor to secure a part of the refunded debt, but never unless the financial *Page 439 
ability of the debtor and the financial arrangements were such that the debtor would have a reasonable opportunity to pay off both mortgages. Obviously before those facts could be ascertained, a full disclosure of the amount and the terms of the proposed second lien would have to be made to H. O. L. C. Surely such a disclosure was essential in the Conklin-Zagrodny transaction in the light of Mr. Zagrodny's early default in his mortgage payments to H. O. L. C.; the necessity of that corporation's relaxing the terms of its mortgage; and the inability of Mr. Zagrodny to pay interest on the second mortgage debt after November, 1938. It is likely and almost probable that had H. O. L. C. been apprised of Mr. Conklin's intention to exact a second mortgage, above and beyond his H. O. L. C. bonds, it would have declined to refinance the outstanding encumbrances in 1934. Mr. Zagrodny's credit record, at that time, was unimpressive; he had experienced extended periods of personal unemployment; he was attempting to support a wife and six children; both his first and second mortgages were in default; and the entire family picture gave little promise of early or continued improvement.
Thus, I must conclude that the securing of a secret second mortgage by Mr. Conklin, without having made disclosure to H. O. L. C., was an act clearly in violation of public policy. Therefore, the mortgage was and is void.
Passing reference is made to a line of cases wherein deficiency second mortgages, comparable to the one in litigation, have been enforced. These mortgages, however, as was the Connecticut mortgage enforced in Lavery vs. Rizza, supra, were uniformly and invariably taken with the knowledge, consent and approval of H. O. L. C. and without secrecy. See Ridge InvestmentCorp. vs. Nicolosi, 15 N.J. Misc. 569, 193 A. 710; Bay CityBank vs. White, 283 Mich. 267, 277 N.W. 888; Ganchoff vs.Bullock, 234 Wis. 613, 291 N.W. 837; Brown vs. Sears,Roebuck Co., 311 Ill. App. 490, 36 N.E.2d 612; McVicarvs. Peters, 12 Wash.2d 92, 120 P.2d 485; andShiver vs. Liberty Building-Loan Assn., supra.
 Accordingly, it is decreed that the mortgage described in the complaint and sought to be foreclosed, which mortgage was dated November 5, 1934, and recorded in the Stamford Land Records, vol. 439, page 356, is null and void; and it is further decreed that the plaintiff cancel and deliver to the defendant