BUFLER, APPELLANT, *v.* PATE ET AL., APPELLEES.

(No. 995—Decided May 28, 1952.)

*Mr. Frank F. Wessel,* for appellant.
*Mr. John D. Andrews,* for appellees Antonio Pate and Innocenca Pate.

MATTHEWS, J.   This appeal presents the question of whether a note and second mortgage, given to secure it, for the deficiency due a mortgagee upon refinancing through Home Owners' Loan Corporation is enforceable when they are executed as a part of the same transaction with full knowledge of the agent of Home Owners' Loan Corporation, charged with the duty of closing the transaction.

This action is for a personal judgment upon the note and a foreclosure of the mortgage. The defendants Antonio Pate and Innocenca Pate were alleged to have executed the note and mortgage. In their answer they denied having executed those instruments, but that defense has been abandoned leaving only the contention that their enforcement would be against the public policy underlying the enactment of Home Owners' Loan Act, Title 12, Section 1461 *et seq.*, U. S. Code.

While Home Owners' Loan Corporation is a defendant and has filed an answer, the only relief prayed for by it is that its lien be declared a first lien and protected as such. Its answer contains the formal printed denial of the allegations of the petition for lack of knowledge. There never was any denial that Home Owners' Loan Corporation's mortgage is a first lien to secure the balance due it.

So the controversy is between the plaintiff-mortgagee and the defendants Antonio Pate and Innocenca Pate, the mortgagors, upon the note and mortgage which they admit they executed to evidence and secure the payment of a debt which they admit they owed, and which they admit are enforceable against them unless the obligation is against public policy and unenforceable for that reason.

The trial court found that the note and mortgage were against public policy and void, and entered judgment for the defendant mortgagors. The appeal is from that judgment.

Antonio Pate and Innocenca Pate owned a lot in the city of Hamilton, Ohio, upon which the plaintiff built a house for them. They financed the construction by borrowing from a building association, to which a first mortgage was given, and a second mortgage was given to the plaintiff for the balance of $700. This was in 1928. By 1934, the mortgagors were in default in mak-

ing payments upon the mortgages and delinquent in payment of taxes. This caused them to seek help from Home Owners' Loan Corporation. Home Owners' Loan Corporation appraised the property at $5,500. It loaned the mortgagors $4,400, which was the maximum amount permitted. The amount of this loan was used to pay the first mortgage of $3,761.22 in full, the taxes amounting to $435.37, and the balance of $158.50 on the plaintiff's second mortgage, upon which $862 was due at that time.

There is no dispute that Home Owners' Loan Corporation was represented in all phases of this transaction by Frank Wessel, one of its attorneys. He testified that when he discovered that the available funds were insufficient to pay the second mortgage in full, he sent for the plaintiff and arranged with him to take the available balance of $158.50 to apply on the interest on the second mortgage, remit the balance of the interest and take a mortgage for $700, secondary to the Home Owners' Loan Corporation's mortgage. This plan was carried out. Wessel prepared the mortgages and had the parties execute them. Judging by the dates, Home Owners' Loan Corporation's mortgage was executed on May 15, 1934, and the second mortgage, to plaintiff, was executed on May 18, 1934, but the evidence is that the agreements as to the two mortgages were contemporaneous. Wessel's only employment was by Home Owners' Loan Corporation.

At the time this loan was made, the plaintiff signed a "Consent" in which he consented "If said refunding can be consummated, to accept in full settlement of the claim * * * the sum of $158.50 * * * and thereupon to release all the claim of the undersigned against said property." He also signed an itemized statement showing the principal and the accumulated interest, totaling $862, and reciting that he consented to a reduction of $703.50.

An examination of the second mortgage, which is the subject of this foreclosure action, discloses that it is dated May 18, 1934, and contains a provision binding the mortgagee "not to foreclose this mortgage for a period of three years from date."

The only evidence on the subject of Wessel's authority and the rules promulgated by Home Owners' Loan Corporation and in force at that time is found in his testimony. He testified that he and various other representatives of Home Owners' Loan Corporation at and prior to that time met in the office of the state attorney for Home Owners' Loan Corporation, that the regulations applicable to making loans were discussed, that they were never given written instructions, and that the only regulation relating to second mortgages at that time was the provision that it could not be foreclosed for three years. He testified also that the regulations limited the Home Owners' Loan Corporation's loan to not more than 80 per cent of the appraised value of the property.

We are favored with the opinion of the trial court in which reference is made to a regulation of Home Owners' Loan Corporation in force at the time, permitting second mortgages when the first and second mortgages combined would not exceed 90 per cent of the appraised value of the property and would not work an undue hardship upon the borrower. We fail to find any evidence of this rule in the record. However, there is no question that these combined loans did not exceed 90 per cent of the appraised value.

We also learn from the trial court's opinion that his judgment for defendants was not based on any finding of fraud, secrecy, duress or collusion on the part of the plaintiff. His judgment was based on his finding that full disclosure had not been made, and that finding was based on his conclusion that as a mat-

ter of law, notice to Wessel, the representative of Home Owners' Loan Corporation, was not notice to his principal, notwithstanding that such notice was acquired while he was engaged in the performance of the duties he was employed to discharge. The court laid stress on the fact that Wessel prepared the note and second mortgage, but there is no evidence of a dual employment. He prepared them, it seems, in the belief that his duty to Home Owners' Loan Corporation included the doing of all things necessary to the completion of the transaction, including negotiating with the holder of the second mortgage to get his consent to release it and take a new second mortgage for a part of the original debt.

Both parties cite *Home Owners' Loan Corporation* v. *Baker*, 73 Ohio App., 195, 55 N. E. (2d), 426, and *Dayton Mortgage & Investment Co.* v. *Theis*, 62 Ohio App., 169, 23 N. E. (2d), 511. In the last cited case the court found that there was no evidence that any representative of Home Owners' Loan Corporation knew of the collateral agreement between the borrower and the second mortgagee, and for that reason held the second mortgage to be void. In the first cited case the validity of the second mortgage was sustained because the court found that Home Owners' Loan Corporation had notice. Neither involved the question of whether notice to the attorney employed by Home Owners' Loan Corporation to examine the title and attend to all the details of closing the transaction constituted notice to Home Owners' Loan Corporation. Indeed, in the *Baker case* the court expressly disclaimed any intention of deciding that point.

The trial court relied on *Markowitz* v. *Berg,* 125 N. J. Eq., 56, 4 A. (2d), 410, for his conclusion that notice or knowledge of the "fee" attorney of Home Owners' Loan Corporation was not notice to or knowledge of

his principal. The court in that case predicated its conclusion on the evidence showing the nature and extent of the attorney's authority. The conclusion was that it showed that the attorney was a special agent and, therefore, had no implied authority. There is no such evidence in this case. On the contrary, the evidence in the case at bar shows the attorney taking full charge of the transaction and making the agreement to give the plaintiff a second mortgage at the very time and as a part of the transaction whereby Home Owners' Loan Corporation took its mortgage.

Furthermore, in *Markowitz* v. *Berg, supra,* on a prior date, the attorney for plaintiff had written to the "fee" attorney, agreeing, not only to accept $200 in full settlement of the judgment, which was the lien in question, but expressly agreeing that he would not proceed on the judgment against the judgment debtor. This letter had been forwarded to Home Owners' Loan Corporation, and it was not until the time of the closing that the plaintiff insisted upon a second mortgage. The defendant at first refused, and yielded only when convinced that the loan would not be granted otherwise. No such situation is shown by this record. This record shows voluntary action, with full knowledge by all the participants.

Now what is the touchstone by which to determine the validity of a second mortgage taken at the time of a refinancing with Home Owners' Loan Corporation? We are of the opinion that the cases furnish the answer with reasonable clarity. That answer is that a second lien taken upon a refinancing with Home Owners' Loan Corporation is not *ipso facto* unlawful and void, and its validity is to be determined by the application of time-honored principles of fair dealing.

The facts of *Lavery* v. *Rizza,* 126 Conn., 132, 9 A. (2d), 819, are identical with those in the case at bar.

There, as here, the three participants in the transaction were the mortgagor, the title-search attorney for Home Owners' Loan Corporation, and the holder of the second mortgage. There, as here, the second mortgagee signed a consent similar to that signed by the plaintiff in this action. There, as here, the title-search attorney, prepared both mortgages, and both mortgages were executed on the same day. The court sustained the validity of the second mortgage. At page 137, the court said:

"In the case before us both the HOLC mortgage and the Mannino mortgage were prepared in the office of the company which, as regards the former, was acting for the HOLC, and the entire transaction was completed on the same day. While the finding is not explicit as to the authority of the Kelsey Company, as the agent of the HOLC, the evidence brought before us by the defendants in the effort to correct this part of the finding is that the Kelsey Company made the arrangements and closed the deal. The knowledge it had of the mortgage to Mannino must have come to it in the very course of the performance of its agency for the HOLC in securing the mortgage it took. Under such circumstances that knowledge is to be imputed to the HOLC."

And, at page 136, *ibid*, the court cited *Dayton Mortgage & Investment Co.* v. *Theis, supra,* and, after quoting with approval from the opinion, summarized the conclusion as follows:

"In that case it was held that where full disclosures are made and in the absence of fraud, secrecy, duress or collusion, the home owner may contract with the original lien holder to take care of the difference between the amount due and the face of the HOLC bonds, provided the total does not exceed the HOLC appraisal. If the representatives of the HOLC know that it

is proposed to give a second mortgage and with that knowledge are willing to accept the first mortgage, we see no reason why the second mortgage should be invalid as against public policy.''

In the opinion in *McVicar* v. *Peters,* 12 Wash. (2d), 92, 120 P. (2d), 485, the court reached the same conclusion, and, at page 96, said:

''These cases, together with cases therein cited, and many others which could be cited, show that the broad contention that a second mortgage, taken in connection with an HOLC refinancing, is *ipso facto* void as against public policy, is wholly untenable. If there can be said to be a general rule to that effect—which we doubt—it is manifestly subject to exceptions.''

And, upon the subject of notice, at page 100, *ibid,* the court said:

''The question is not what authority did the HOLC representative have to perform a certain act for his principal but—Is the knowledge which a local representative of the HOLC acquires in making an HOLC loan imputable to his principal? That question is, we think, satisfactorily answered in one of the quotations made from *Lavery* v. *Rizza* early in this opinion. A negative answer would, obviously, be absurd. This great corporation carries on business in every state of the Union and with literally millions of people. The head office at Washington could not possibly have actual knowledge of the details of all these transactions, or of everything that its representatives learn in dealing with its customers. If the knowledge of the representatives of the corporation, acquired while making loans in its behalf, be not imputable to the corporation, how could anyone safely transact business with the corporation at a local office?''

See, also, *Williston Savings & Loan Association* v. *Kellar,* 74 N. D., 338, 22 N. W. (2d), 30.

For these reasons, the judgment is reversed and the cause remanded with instructions to enter judgment for the plaintiff.

*Judgment reversed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur in the syllabus, opinion and judgment.